54 P.3d 433

**Karyn NELSON, Plaintiff–Appellant,**

v.

**UNIVERSITY OF HAWAI'I, as body corporation; Bart Buxton, individually and in his official capacities as Athletic Training Education Director and Assistant Professor of the Health and Physical Education and Recreation Depart-** ment, University of Hawai'i–Manoa; Kwok W. Ho, individually and in his official capacity as Chair of Health and Physical Education and Recreation Department, University of Hawai'i, Defendants–Appellees,

and

**John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; Doe Unincorporated Organizations 1–10; and Doe Governmental Agencies 1–10, Defendants.**

No. 22236.

Supreme Court of Hawai'i.

Sept. 23, 2002.

As Amended on Denial of Reconsideration Oct. 31, 2002.

R. Steven Geshell, on the motion, Honolulu, for plaintiff-appellant.

Kathleen N.A. Watanabe and Gary Hynds, Deputy Attorneys General; in opposition, for defendants-appellees.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by MOON, C.J.

Following this court's opinion in *Nelson v. University of Hawai'i*, 97 Hawai'i 376, 38 P.3d 95 (2001), plaintiff-appellant Karyn Nelson filed a motion seeking: (1) $263.59 in costs, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 39 (2000);[1] and (2) $16,761.60 in attorneys' fees for work on appeal, pursuant to HRAP Rule 53(b) (2001)[2] and Hawai'i Revised Statutes (HRS)

---

1. HRAP Rule 39(a) provides in pertinent part:

 Except in criminal cases or as otherwise provided by law, ... if a judgment is affirmed in part and reversed in part, or is vacated, or a petition granted in part and denied in part, the costs shall be allowed only as ordered by the appellate court. If the side against whom costs are assessed has multiple parties, the appellate court may apportion the assessment or impose it jointly and severally.

2. HRAP Rule 53(b) provides that "[p]arties claiming attorneys' fees pursuant to statute or contract may submit requests for the fees no later than 14 days after entry of judgment."

§ 378–5(c) (1993), *see infra*, a fee-shifting statute that mandates an award of reasonable fees for "any judgment awarded to" an employment discrimination plaintiff. Defendant-appellee University of Hawai'i (UH)[3] opposes Nelson's motion for fees on the grounds that Nelson has not yet demonstrated that she is entitled to relief on the merits of any of her claims. For the reasons discussed herein, we agree with UH. We, therefore, hold that Nelson's motion be: (1) granted with respect to costs; and (2) denied with respect to fees, without prejudice to her ability to obtain reimbursement for fees should she obtain relief in the future, as discussed herein.

## I. BACKGROUND

In 1996, Nelson, a former faculty member in the Department of Health, Physical Education, and Recreation at UH, filed suit against UH alleging, *inter alia:* disability discrimination, sex discrimination, and unlawful retaliation, in violation of HRS § 378–2; invasion of privacy; negligent infliction of emotional distress (NIED); and intentional infliction of emotional distress (IIED). *See Nelson*, 97 Hawai'i at 380–81, 38 P.3d at 99–100. Following a jury trial in which the jury returned a verdict in favor of Nelson on the NIED claim and in favor of UH on all other claims, the trial court granted UH's motion for judgment notwithstanding the verdict on the NIED claim and thereafter entered judgment on all claims in favor of UH. *See id.* at 384, 38 P.3d at 103. Nelson appealed, and this court vacated the trial court's judgment and remanded for a new trial on the employment discrimination, NIED, and IIED claims. *See id.* at 395, 38 P.3d at 114. The primary bases for this court's decision were that the trial court erred by: (1) refusing to permit certain rebuttal evidence offered by Nelson, *see id.* at 384–86, 38 P.3d at 103–05; (2) incorrectly instructing the jury on the elements of a sexual harassment claim, *see id.* at 386–92, 38 P.3d at 105–11; and (3) incorrectly ruling that Nelson's NIED claim was precluded by workers' compensation law,

see id. at 392–95, 38 P.3d at 111–14. This court's opinion was filed on December 11, 2001, and the judgment on appeal was entered on January 30, 2002. Nelson timely filed her motion for fees and costs, UH timely filed a memorandum in opposition, and Nelson timely filed a reply.

## II. DISCUSSION

### A. Costs

UH does not dispute Nelson's request for costs pursuant to HRAP Rule 39, *see supra* note 1. The request includes photocopying and transcript preparation costs allowable under HRAP Rule 39 and are reasonable. Accordingly, we award Nelson $263.59 for costs attributable to this appeal.

### B. Fees

■ Pursuant to HRS § 378–5(c), Nelson seeks fees for work performed by her attorney on her appeal. Relying on federal authority interpreting analogous federal law, UH contends that, because Nelson has not yet actually prevailed on the merits of any of her claims, she is not entitled to attorneys' fees. Nelson counters that the language of HRS § 378–5(c) differs from analogous federal statutes and that the language of HRS § 378–5(c) entitles her to receive fees for her attorney's appellate work because the appellate "judgment" was in her favor. Although Nelson is correct that the language of HRS § 378–5(c) differs from analogous federal law, we believe that, under established principles of statutory interpretation, the language of HRS § 378–5(c) nonetheless does not entitle her to fees at this time.

■ To begin, it is helpful to review this court's oft-stated principles of statutory construction.

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the con-

---

**3.** Various employees and UH were named as defendants in this case; they are collectively re-

ferred to as "UH."

text of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) (1993). . . .

Furthermore, the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality. *See also* HRS § 1–15(3) (1993) ("Every construction which leads to an absurdity shall be rejected.").

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) (some brackets, ellipses, internal quotation marks, and citations omitted) (block quotation format omitted) (footnote omitted).

HRS § 378–5, entitled "Remedies[,]" states:

(a) The [Hawai'i Civil Rights Commission] may order appropriate affirmative action, including, but not limited to, hiring, reinstatement, or upgrading of employees, with or without backpay, restoration to membership in any respondent labor organization, or other remedies as provided under chapter 368, which in the judgment of the commission, will effectuate the purpose of this part [pertaining to discriminatory employment practices], including a requirement for reporting on the manner of compliance.

(b) In any civil action brought under this part, if the court finds that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this part, the court may enjoin the respondent from engaging in such unlawful discriminatory practice and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement, hiring, or upgrading of employees, with or without backpay, or restoration of membership in any respondent

labor organization, or any other equitable relief the court deems appropriate. Backpay liability shall not accrue from a date more than two years prior to the filing of the complaint with the commission.

(c) In any action brought under this part, the court, in addition to any judgment awarded to the plaintiff or plaintiffs, shall allow costs of action, including costs of fees of any nature and reasonable attorney's fees, to be paid by the defendant.

 Subsection (c), the provision at issue here, requires the court to allow fees for "any action" brought under the employment discrimination provisions of HRS chapter 378. An "action" is generally defined as a "proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." *Leslie v. Estate of Tavares,* 93 Hawai'i 1, 4, 994 P.2d 1047, 1050 (2000) (quoting *Black's Law Dictionary* 28 (6th ed.1990)) (internal quotation marks omitted). An appeal is not a new action, but rather, a continuation of an original action. *See Leslie,* 93 Hawai'i at 4, 994 P.2d at 1050. Moreover, the statute requires the allowance of fees for "any judgment" received during the action. Thus, attorneys' fees may be awarded for work on appeal in appropriate cases. *Cf. S. Utsunomiya Enters., Inc. v. Moomuku Country Club,* 76 Hawai'i 396, 398–99, 879 P.2d 501, 503–04 (1994) (language of HRS § 607–14 (1993) providing for payment of attorneys' fees involving actions in the nature of assumpsit in "all the courts" permits appellate court to award attorneys' fees incurred on appeal).

However, in this case, the judgment on appeal simply vacated the trial court's judgment in favor of UH and remanded the case for a new trial on the merits. Therefore, in order to determine if Nelson has been awarded a "judgment" within the meaning of HRS § 378–5(c), we must look to the statute in its entirety. In so doing, we note that, immediately preceding the sentence containing the phrase "in addition to any judgment awarded to the plaintiff" in subsection (c), is subsection (b), which, in particular, provides examples of relief that could constitute part

of a "judgment" to a plaintiff. These include various forms of injunctive relief, such as reinstatement, hiring or upgrading of employees, and damages, such as backpay. All of these forms of relief are predicated on the trial court finding that the defendant "has engaged in or is engaging in any unlawful discriminatory practice as defined in this part[.]" Therefore, considering HRS § 378–5 as a whole, the phrase "judgment awarded to the plaintiff" refers generally to favorable relief or damages that follow as a result of a finding that the defendant engaged in a discriminatory practice. Consequently, a judgment on appeal that merely vacates a trial court judgment unfavorable to the plaintiff and places the plaintiff back where the plaintiff started does not, in itself, provide any grounds for an award of fees to the plaintiff.

The foregoing interpretation is consistent with the purpose of HRS § 378–5(c), which is a fee-shifting statute akin to federal employment discrimination and civil rights fee-shifting statutes that serve a "private attorney general" function by rewarding private counsel for undertaking to serve a public purpose by representing victims of discrimination. See generally Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 401–02, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (noting that, "[w]hen the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law" and that a plaintiff who obtains an injunction under the law "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority"). Unlike HRS § 378–5(c), however, typical federal fee-shifting statutes do not refer to a "judgment," but rather, authorize courts to award reasonable attorneys' fees to a "prevailing or substantially prevailing party." See Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 444 n. 77, 32 P.3d 52, 88 n. 77 (2001) (quoting City of Burlington v. Dague, 505 U.S. 557, 561–62, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)) (internal quotation marks omitted). The federal analogue to HRS § 378–5(c) is 42 U.S.C. § 2000e–5(k) (2000), which provides:

In any action or proceeding under this subchapter [dealing with employment discrimination,] the court, in its discretion, may allow the prevailing party, other than the [Equal Employment Opportunity] Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

In Schefke, this court, in applying HRS § 378–5(c), looked to federal case law interpreting 42 U.S.C. § 1988 (2000), a similar civil rights fee-shifting statutory provision,[4] to determine how to award fees to a plaintiff who prevailed on some, but not all, of his or her claims. See Schefke, 96 Hawai'i at 444–45, 32 P.3d at 88–89; see also id. at 445–56, 32 P.3d at 89–100 (utilizing federal case law to assist in determining the applicability of contingency fee enhancements to HRS § 378–5(c)). Thus, notwithstanding the linguistic dissimilarities between HRS § 378–5(c) and federal law, the latter serves as a guide in applying HRS § 378–5(c) in appropriate circumstances, particularly when considering the similar underlying purposes of both state and federal anti-discrimination law.

Hanrahan v. Hampton, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), a case involving the award of attorneys' fees pursuant to 42 U.S.C. § 1988, is similar to this case. In Hanrahan, the trial court directed

4. 42 U.S.C. § 1988(b) states:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

a verdict against several federal civil rights plaintiffs at the close of their case-in-chief. *Id.* at 754–55, 100 S.Ct. 1987. The court of appeals reversed and remanded the case for a new trial; in the process, the appellate court awarded the plaintiffs attorneys' fees for appellate work on the ground that the plaintiffs were the "prevailing party" on appeal. *See id.* at 755–56, 100 S.Ct. 1987. The Supreme Court reversed the award of fees. *See id.* at 759, 100 S.Ct. 1987. In so doing, the Supreme Court noted that the legislative history of the fee-shifting statute indicated that it was clear that a plaintiff may, in some circumstances, be a "prevailing party" without having obtained a final judgment on the merits and that it was "evident also that Congress contemplated the award of fees *pendente lite*[,]" *see id.* at 756–57, 100 S.Ct. 1987, or "during the actual progress[,]" *Black's Law Dictionary* 1134 (6th ed.1990), of the litigation. The Court explained that this would be appropriate where "a party has prevailed on an important matter in the course of the litigation, even when he [or she] ultimately does not prevail on all issues." *See Hanrahan,* 446 U.S. at 757, 100 S.Ct. 1987 (internal quotation marks and citations omitted). Where a suit is complex, lengthy, and may result in an initial judgment followed by an appeal in which portions of the initial judgment are affirmed and portions remanded, such an interpretation of the law advances the underlying purposes of the fee-shifting provisions because it may otherwise be difficult for plaintiffs to sustain the litigation without receiving an interim award of attorneys' fees. However, "it seems clearly to have been the intent of Congress to permit such an interlocutory award only to a party who has established his [or her] entitlement to some relief on the merits of his claims, either in the trial court or on appeal." *Hanrahan,* 446 U.S. at 757, 100 S.Ct. 1987; *see also Sosa v. Hiraoka,* 920 F.2d 1451, 1456–62 (9th Cir.1990) (employment discrimination plaintiff—who succeeded on appeal in reversing district court's dismissal on rulings involving statute of limitations, failure to plead with specificity, sovereign immunity, and other jurisdictional grounds—was not entitled to attorney's fees on appeal because he had "not yet prevailed on the merits of any claims").

Thus, the private attorney general concept underlying the federal fee-shifting provisions requires that the federal plaintiff demonstrate at least *some* measure of success on the merits; in considering the underlying purpose of HRS § 378–5(c), we see no reason why a plaintiff seeking fees under that provision should also not be required to demonstrate a similar showing. In *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court further refined the requisite federal showing to be that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Id.* at 792–93, 109 S.Ct. 1486. This generally comports with the purpose of HRS § 378–5(c) as well.

The foregoing policy considerations are consistent with the language of HRS § 378–5(c). By requiring an award of fees following "*any* judgment awarded to the plaintiff" (emphasis added), the statute permits the award of fees *pendente lite,* or "during the actual progress," of the litigation, be it at trial or on appeal. In other words, an appellate judgment that affirms or directs a partial victory for the plaintiff, while at the same time remanding the case for further proceedings, could serve as the basis for a fees award. However, the language "judgment awarded to the plaintiff," when read in conjunction with subsection (b)'s examples of the types of relief that could be encompassed by such a "judgment" and considered in light of HRS § 378–5(c)'s purpose, requires the attainment of a judgment creating at least a "material alteration of the legal relationship of the parties" before fees can be awarded.

In this case, this court's judgment permitted Nelson to retry her case. She has not established that discrimination occurred, and she is legally in the same position as she was before trial. Consequently, she has not been awarded a "judgment" within the meaning of HRS § 378–5(c).

Nelson makes three additional arguments to further support her contention that she should be awarded fees for her attorneys' work on appeal. Ultimately, they

are unpersuasive. First, Nelson contends that UH should be "judicially estopped" from opposing the award of fees because UH was the party that induced the trial court to create the errors leading to this court's decision to vacate and remand the trial court's judgment. We disagree. Pursuant to the doctrine of judicial estoppel,

> a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.

*Roxas v. Marcos*, 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (internal brackets and block quotation format omitted). There was nothing inconsistent with the arguments made by UH at the trial and the appeal levels; this court simply disagreed with UH. Consequently, the fact that the trial court erroneously accepted UH's legal arguments does not preclude UH from contending that Nelson is not entitled to an award of attorneys' fees on appeal.

Second, Nelson relies upon this court's decision in *Blair v. Ing*, 96 Hawai'i 327, 31 P.3d 184 (2001), for the proposition that a party may be entitled to attorneys' fees even though she has not obtained a judgment on the merits. In *Blair*, this court held that a defendant who successfully defended the trial court's dismissal of the claim against him on the grounds that the plaintiff had failed to state a claim for relief, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(6), was entitled to fees for his attorney's work on appeal notwithstanding the fact that the claim was "dismissed" and that the trial court's judgment was not "on the

merits". *See id.* at 328–32, 31 P.3d at 185–89. However, HRS § 607–14 (Supp.2000), not HRS § 378–5(c), was the statute at issue in *Blair*. HRS § 607–14 provides for fees to be paid by the "losing party" "[i]n *all* the courts, in all actions in the nature of assumpsit[.]" (Emphasis added.) Thus, the language of HRS § 607–14 is substantively different from the language of HRS § 378–5(c). Moreover, in applying HRS § 607–14, this court held that "a defendant who succeeds in obtaining a judgment of dismissal is a prevailing party for purposes of fees under HRS § 607–14." *Id.* at 331, 31 P.3d at 188. The judgment of dismissal in *Blair* effectively terminated the litigation, thereby establishing a "losing party." In this case, Nelson, unlike the successful appellee in *Blair*, has not obtained a judgment that will terminate the litigation and establish a "losing party." Accordingly, *Blair* is inapposite to the instant case.

Finally, Nelson contends that it is the better policy that this court decide the reasonableness of attorneys' fees incurred during this appeal, rather than perhaps requiring a future trial court to do so. Specifically, Nelson suggests that she may win some or all of her claims on remand. If so, she will certainly be entitled, *inter alia*, to an award of reasonable attorneys' fees incurred during the present appeal, which would have been necessary in order for her ultimately to secure the trial judgment.[5] However, because this court will no longer have jurisdiction over the case in such an instance, the *trial* court will then have to determine the reasonableness of fees incurred during the present appeal. Nelson posits that it is better for *this* court to review the current fees request because this court "is in the best position of all to decide those issues, having decided the

---

5. We note that HRAP Rule 53(b) requires that parties moving for attorneys' fees pursuant to a statute must do so within fourteen days of entry of judgment. In this case, the term "judgment" in HRAP Rule 53(b) is given the same meaning as the term "judgment" in HRS § 378–5(c). Thus, for example, in a case such as this one, Nelson would not be required to file her motion for fees performed during this appeal unless and until she obtains a HRS § 378–5(c) "judgment." Once she obtains such a judgment, however, she must file the motion within fourteen days in

whatever court has jurisdiction of the case at the time. (Hawai'i Rules of Civil Procedure (HRCP) Rule 54(d) also requires that parties moving for attorneys' fees pursuant to statute must do so within fourteen days after entry of "judgment" and, in this context, the term "judgment" in HRCP Rule 54(d) also carries the same meaning as the term in HRS § 378–5(c).) As in this case, premature fee requests will be denied without prejudice to the litigant's right to be awarded fees in the future.

appeal and having been familiar with the work that was done to produce the result in this case correcting the reversible error of the trial court."

We agree with Nelson that, as a general rule, it would be preferable for this court to determine the reasonableness of attorneys' fees incurred for work performed in this appeal, rather than leaving the task to a future trial court should the hypothetical situation she poses arise. Indeed, in *S. Utsunomiya Enterprises,* this court declined to consider, as an original matter, awarding the portion of attorneys' fees attributable to work at the trial level due, in part, to the disputed issues concerning the reasonableness of the fees incurred during trial, which this court believed could best be determined by the trial court. *See S. Utsunomiya Enterprises,* 76 Hawai'i at 402, 879 P.2d at 507. However, we do not believe that the foregoing consideration merits adopting an interpretation of HRS § 378-5(c) that would require this court to award fees in circumstances, such as those here, where the plaintiff ultimately may not prevail and would therefore not be entitled to such fees. Although, as previously stated, it would be preferable for this court to determine the reasonableness of fees incurred for appellate work, such a consideration does not warrant perverting the intent of HRS § 378-5(c) in the first place. Moreover, there is less possibility of error when a trial court is called upon to assess the reasonableness of fees incurred for appellate work than when, as in *S. Utsunomiya Enterprises,* an appellate court is called upon to assess the reasonableness of fees incurred for trial work. There are a multitude of situations that arise during litigation at the trial level that may contribute to the legal and strategic decisions made by each party; the trial judge is in the best position to ascertain the motivations of the parties and the reasonableness of actions undertaken by counsel and the parties. In contrast, the appellate record is less voluminous, and the appellate arguments are narrowly focused on the few legal issues that the appellant has identified as error. A trial judge can assess the reasonableness of appellate work in much the same way as he or she can

assess the reasonableness of time spent for an equivalent issue in a trial brief. Accordingly, should Nelson succeed on some or all of her claims on remand, and this court does not again acquire jurisdiction over the case, the trial court can assess the reasonableness of attorneys' fees for work done in the instant appeal. Nothing in the language of HRS § 378-5(c) suggests to the contrary. Similarly, federal district courts applying analogous fee-shifting provisions have awarded fees for work incurred on appeal during an earlier stage of the litigation. *See, e.g., New York State National Organization for Women v. Terry,* 94 F.Supp.2d 465, 470–73 (S.D.N.Y.2000); *Dickinson v. Indiana State Election Bd.,* 817 F.Supp. 737, 750 (S.D.Ind.1992); *Spear v. Town of West Hartford,* 789 F.Supp. 80, 82 (D.Conn. 1992); *Akron Center for Reproductive Health v. City of Akron,* 604 F.Supp. 1275, 1284 (N.D.Ohio 1985); *but see U & I Sanitation v. City of Columbus,* 112 F.Supp.2d 902, 906 (D.Neb.2000); *cf. Martin v. Nickels and Dimes, Inc.,* 804 F.Supp. 83, 84–85 (D.Haw.1992) (Ninth Circuit rule requires that fee request be filed in the appellate court, which may be subsequently transferred to trial court).

## III. *CONCLUSION*

Based on the foregoing, we deny in part and grant in part Nelson's motion for fees and costs. Specifically, we award Nelson $263.59 in costs because this request is undisputed, and deny Nelson's request for attorneys' fees without prejudice to her ability to collect such fees in the future should she obtain a judgment on her employment discrimination claims that represents a material alteration of the legal relationship between herself and UH. In such circumstance, the trial court may award fees for work incurred during this appeal.