**Electronically Filed
Supreme Court
SCAP-12-0000764
27-MAR-2015
09:00 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

RAYMOND GURROBAT,
individually and on behalf of all others similarly situated,
Petitioner/Plaintiff-Appellee/Cross-Appellant,

vs.

HTH CORPORATION; PACIFIC BEACH CORPORATION,
Respondents/Defendants-Appellants/Cross-Appellees.

SCAP-12-0000764

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-12-0000764; CIV NO. 08-1-2528-12)

MARCH 27, 2015

RECKTENWALD, C.J., NAKAYAMA, MCKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

I.    Introduction

Following the publication of our opinion in Gurrobat v. HTH Corp., 133 Hawai'i 1, 323 P.3d 792 (2014), Plaintiff-Appellee/Cross-Appellant Raymond Gurrobat ("Gurrobat"), individually and on behalf of a class of similarly situated

persons, requested that we award him attorneys' fees and costs for his appeal and cross-appeal, and provide for interest on the judgment. Gurrobat bases his request for fees and costs on Hawai'i Rules of Appellate Procedure ("HRAP") Rule 39 (2007), and on the fee shifting provisions found in Hawai'i Revised Statutes ("HRS") §§ 388-11(c) (Supp. 1999) and 480-13(a) (2008). He bases his request for interest on HRAP Rule 37 (2000). In total, Gurrobat requests an award of attorneys' fees based on a lodestar of $90,422.50 and enhanced based on a multiplier to be determined by the court, 4.712% general excise tax on the awarded fees, $535.55 in costs,[1] and an award of post judgment interest on the damages affirmed in our opinion.

Defendants-Appellants/Cross-Appellees HTH Corp. and Pacific Beach Corp. ("Defendants") acknowledge that Gurrobat is entitled to reasonable attorneys' fees and costs under HRS § 388-11(c) for prevailing on their appeal, but contend he is not entitled to fees and costs under HRS § 480-13(a)(1) for his successful cross-appeal. In addition, Defendants oppose many individual time entries in Gurrobat's fee request as being vague and/or block billed. Defendants also claim that any fees awarded should be subject to a downward adjustment of thirty percent

---

[1] Gurrobat initially requested $555.45 in costs, but withdrew entries totaling $19.90 in his reply memorandum; Gurrobat also put his requested costs at $589.25 at one point, but this appears to be a typographical error.

because the key issue underlying Defendants' appeal was largely decided by this court in <u>Villon v. Marriott Hotel Services, Inc.</u>, 130 Hawai'i 130, 306 P.3d 175 (2013).  Defendants oppose all but $18.85 of Gurrobat's costs requested on various grounds.  Finally, Defendants assert that an award of interest should be denied as premature, and is better left to the discretion of the trial court.

We hold that Gurrobat is entitled to attorneys' fees for both the appeal and cross-appeal, in the amount of $84,032.50, plus $3,959.61 in general excise tax.  We also award costs in the amount of $435.55.  In addition, we hold Defendants jointly and severally liable for the payment of Gurrobat's attorneys' fees and costs.  Finally, we hold that post judgment interest is not appropriate under the circumstances of this case.

## II.  Background

Gurrobat filed a class action complaint in the Circuit Court of the First Circuit ("circuit court"), asserting claims for damages under both Hawaii's wage laws, HRS §§ 388-6 (1993) and 388-10 (Supp. 1999), and under Hawaii's unfair methods of competition ("UMOC") provisions, HRS §§ 480-2(e) (2008) and 480-13(a).  <u>Gurrobat</u>, 133 Hawai'i at 3, 323 P.3d at 794.  The lawsuit was based on Defendants' violations of HRS § 481B-14 (2008) for charging customers of the Pacific Beach Hotel and the Pagoda Hotel service charges without fully disclosing to customers that

the charges were not entirely being distributed to non-managerial service employees.  Id.

The circuit court ultimately granted summary judgment for Gurrobat on the wage law claims, awarded $1,678,783 in damages, and held Defendants jointly and severally liable for the damages.  133 Hawaiʻi at 10, 323 P.3d at 801.  The circuit court, however, granted summary judgment for Defendants on the UMOC claims.  133 Hawaiʻi at 3, 323 P.3d at 794.  Defendants appealed the circuit court's grant of summary judgment on the wage law claims; Gurrobat cross-appealed the circuit court's grant of summary judgment on the UMOC claims.  133 Hawaiʻi at 4, 323 P.3d at 795.

This court accepted a discretionary transfer from the Intermediate Court of Appeals pursuant to HRS § 602-58(b)(1) (Supp. 2011).  On February 25, 2014, we issued our opinion in Gurrobat, 133 Hawaiʻi 1, 323 P.3d 792 ("Opinion").  The Opinion (1) affirmed the circuit court's order granting Gurrobat's motion for class certification; (2) affirmed the circuit court's grant of summary judgment as to the unpaid wages under HRS Chapter 388; and (3) affirmed in part the award of damages as to the HRS Chapter 388 claim.  133 Hawaiʻi at 23, 323 P.3d at 814. We vacated, however, the portion of the grant of summary judgment as to damages under HRS Chapter 388 that imposed joint

and several liability on Defendants and remanded for further proceedings to properly apportion damages between Defendants.[2] Id. The Opinion further held that the circuit court erred in granting Defendants' motion for summary judgment on the UMOC claims, and that Gurrobat had established the necessary elements to recover damages under HRS §§ 480-2 and 480-13 for violations of HRS § 481B-14. 133 Hawaiʻi at 23-24, 323 P.3d at 814-15. We therefore vacated the circuit court's order granting Defendants' motion for summary judgment on Gurrobat's UMOC claim, and remanded the claim to the circuit court for further proceedings consistent with the Opinion. 133 Hawaiʻi at 24, 323 P.3d at 815.

Gurrobat then timely filed a "Motion for Attorneys' Fees and Costs and Provision of Interest." Defendants filed a Memorandum in Opposition; Gurrobat filed a Reply. We denied the motion without prejudice because it did not substantially comply with HRAP Form 8. Gurrobat then filed a compliant First Amended Motion for Attorneys' Fees and Costs and Provision of Interest ("Motion"). Following a substitution of counsel, Defendants filed a new Memorandum in Opposition ("Opposition") on July 28,

---

[2] One of the two defendants, HTH Corporation, operated both hotels where service charges were unlawfully withheld from service employees; the other defendant, Pacific Beach Corporation, only operated one of the two hotels, and therefore could only be held liable for injuries to employees at that hotel.

2014 that raised objections not found in the prior opposition.[3]

Gurrobat then filed a new Reply Memorandum ("Reply").

## III. Attorneys' Fees and Costs

### A.    Availability of Attorneys' Fees

The "American Rule" provides that each party is normally responsible for paying his or her attorneys' fees. Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 444, 32 P.3d 52, 88 (2001).  Attorneys' fees are only, therefore, "chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent."  Lee v. Aiu, 85 Hawai'i 19, 32, 936 P.2d 655, 668 (1997) (citation omitted).

Gurrobat's attorneys' fees request is based on several statutes.  Gurrobat asserted claims based on Defendants' violation of Hawaii's hotel or restaurant service charge law, HRS § 481B-14.  HRS § 481B-4 deems violations of Chapter 481B to be "unfair method[s] of competition . . . within the meaning of section 480-2."  HRS 480-13(a), in turn, provides a private cause of action for those injured by violations of Chapter 480.

---

[3]     In his Reply, Gurrobat questions the appropriateness of Defendants raising new substantive arguments in response to what he characterizes as a "non-substantive filing made to meet form requirements." Reply at 9.  While Gurrobat styles the Motion as a "First Amended Motion," it was filed after the original motion was denied without prejudice, and is therefore better considered as a new motion rather than an amended one.  See generally 5 Wright & Miller Federal Practice and Procedure: Civil 3d § 1194 ("In theory, a motion may be amended at any time before the judge has acted upon the request. . . .") (emphasis added).  We will therefore consider only the July 28, 2014 filing as the Opposition to this motion.

In addition, we have held that employees harmed by violations of HRS § 481B-4 may bring actions to enforce their rights and seek remedies under HRS § 388-11.  See Villon, 130 Hawaiʻi at 132-33, 306 P.3d at 177-78.

Gurrobat therefore bases his request for attorneys' fees on the statutory fee shifting provisions found in HRS §§ 388-11(c) and 480-13(a).  Defendants acknowledge that Gurrobat is entitled to fees under the former, but claim that fees are not available under the latter under the circumstances of this case.

Defendants' objections are based on their reading of the text of these two statutes, so we begin with a comparison.

HRS § 388-11(c) reads, in relevant part:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow interest of six per cent per year from the date the wages were due, costs of action, including costs of fees of any nature, and reasonable attorney's fees, to be paid by the defendant. . . .

HRS § 480-13(a)(1) reads, in relevant part:

> [A]ny person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter . . . [m]ay sue for damages sustained by the person, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit . . . .

Defendants essentially argue that HRS § 480-13(a) allows for attorneys' fees on appeal only when the trial court decision appealed from resulted in a final judgment for the plaintiff. The circuit court issued a judgment that was for Gurrobat on his

7

HRS Chapter 388 claims, but which was against him on his HRS Chapter 480 claims.  Therefore, Defendants assert, the "judgment" required under HRS § 480-13(a)(1) is absent and Gurrobat cannot recover fees for hours expended on his cross-appeal of the circuit court's grant of summary judgment for Defendants on the Chapter 480 claim.

In support of their argument, Defendants cite to our decision in Nelson v. University of Hawaiʻi, 99 Hawaiʻi 262, 54 P.3d 433 (2002).  In Nelson, plaintiffs requested attorneys' fees following a successful appeal that vacated a trial court judgment in favor of defendants and remanded the case for a new trial.  99 Hawaiʻi at 264, 54 P.3d 435.  Plaintiffs in that case based their fee request on HRS § 378-5(c), a fee shifting statute that provides:

> In any action brought under this part, the court, in addition to any judgment awarded to the plaintiff or plaintiffs, shall allow costs of action, including costs of fees of any nature and reasonable attorney's fees, to be paid by the defendant.

99 Hawaiʻi at 265, 54 P.3d at 436.

This court denied Nelson's request for fees without prejudice, finding that the award of fees was inappropriate, as Nelson's appellate victory "merely vacate[d] a trial court judgment unfavorable to the plaintiff, and place[d] the plaintiff back where the plaintiff started."  99 Hawaiʻi at 266, 54 P.3d at 437.  Defendants therefore claim that Nelson bars an

8

award of attorneys' fees on appeal if this court has not issued a judgment awarding damages to the plaintiff. We disagree.

When interpreting a statute, we follow well established principles:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

State v. Silver, 125 Hawai'i 1, 4, 249 P.3d 1141, 1144 (2011) (citations omitted).

The word "judgment" may be defined as "a court's final determination of the rights and obligations of the parties in a case." Black's Law Dictionary 858 (8th ed. 2004). A judgment on appeal meets this definition. In Nelson, this court addressed the question of whether a judgment on appeal could be a judgment for the purposes of an award of fees. 99 Hawai'i at 265, 54 P.3d at 436. In that case, we held that attorneys' fees were potentially available on appeal given the relevant statutory language in HRS § 378-5(c), which reads: "[T]he court, in addition to any judgment awarded to the plaintiff . . .

9

. shall allow costs of action, including . . . reasonable attorney's fees, to be paid by the defendant." Id.

The relevant language in HRS § 480-13(a)(1) is similar, but not identical: "[I]f the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit . . . ." The only difference of note between these provisions is that HRS § 378-5(c) uses the term "any judgment," while HRS § 480-13(a)(1) uses "the judgment." In context, the two phrases convey similar meanings, but there could be some uncertainty as to whether the words have different meanings. Silver, 125 Hawai'i at 4, 249 P.3d at 1144. Confronted with this ambiguity, we will "consider 'the reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning.'" 125 Hawai'i at 4-5, 249 P.3d at 1144-45 (citation and brackets omitted).

The language of the fee shifting provision in HRS § 480-13(a)(1) dates back to the initial passage of Hawaii's antitrust laws. 1961 Haw. Sess. Laws 313. The passage of Hawaii's antitrust statutes was part of the transition to statehood, and was intended to prevent "a void in the regulation of business practices which may cause practices destructive of competition to prevail." H. Stand. Comm. Rep. No. 97, in 1961

10

House Journal, at 687.  Private rights of action providing for

treble damages and fee awards are not unique to Hawaii's

antitrust statutes; they are also a common feature of federal

antitrust laws:

> Where the interests of individuals or private groups or those who bear a special relation to the prohibition of a statute are identical with the public interest in having a statute enforced, it is not uncommon to permit them to invoke sanctions. This stimulates one set of private interest to combat transgressions by another without resort to governmental enforcement agencies. . . . It is clear Congress intended to use private self-interest as a means of enforcement and to arm injured persons with private means to retribution when it gave to any injured party a private cause of action in which his damages are to be made good threefold, with costs of suit and reasonable attorney's fee.

Bruce's Juices v. American Can Co., 330 U.S. 743, 751 (1947)

(discussing Robinson-Patman Act).

    The provisions of HRS § 480-13 are similar to the language

of section 4 of the Clayton Act, 15 U.S.C. § 15(a).[4]  See Davis

v. Four Seasons Hotel, Ltd., 122 Hawai'i 423, 427-28, 228 P.3d

303, 307-08 (2010).  The private right of action provisions of

the Clayton Act were "intended to help persons of small means

who are injured in their property or business by combinations or

corporations violating the antitrust laws."  Minnesota Mining &

---

[4]    Section 4 of the Clayton Act, 15 U.S.C. § 15(a) (2009), provides in relevant part:

(a) Amount of recovery; prejudgment interest: Except as provided in subsection (b) of this section, any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . , and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. . . .

Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 319 (1965) (internal quotation marks omitted) (quoting legislative history of Clayton Antitrust Act).  The attorney fee provisions in federal antitrust statutes are an important part of the private right of action.  See Farmington Dowel Prods. Co. v. Forster Mfg. Co., 421 F.2d 61, 88 (1st Cir. 1969) (rejecting argument that attorneys' fees could not be awarded unless actually paid by plaintiff because such a holding "would leave private antitrust enforcement to the independently wealthy.").

The fee shifting provision in HRS § 480-13(a)(1) is thus akin to fee shifting provisions found in federal antitrust laws. HRS § 480-3 (2008) specifically provides that "[t]his chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes . . . ."  We therefore look to federal law for guidance in interpreting HRS § 480-13, and turn, as we did in Nelson and in Schefke, to federal case law interpreting the similar federal statutes.  See Nelson, 99 Hawai'i at 266, 54 P.3d at 437; Schefke, 96 Hawai'i at 444-45, 32 P.3d at 88-89.

The language of the Clayton Act's fee shifting provisions is similar to the language of Hawaii's law.  HRS § 480-13(a)(1) provides that the award of treble damages, costs, and fees will occur "if the judgment is for the plaintiff."  The federal statute omits the "if the judgment" language, and simply

12

provides that "any person who shall be injured . . . shall recover" treble damages, costs and fees.  15 U.S.C. § 15(a). Section 4 of the Clayton Act permits the recovery of fees for expenses incurred on appeal; the United States Supreme Court has held that the language and purpose of the Clayton Act make it clear that appellate fees are available.  See Perkins v. Standard Oil Co. of Cal., 399 U.S. 222, 223 (1970) (per curiam). The fee shifting provisions of the Clayton Act are present to ensure that the plaintiff's treble damages recovery is not reduced by the fees incurred on appeal.  See Perkins v. Standard Oil Co. of Cal., 474 F.2d 549, 553 (9th Cir. 1973), supplemented by, 487 F.2d 672 (9th Cir. 1973).

As in Nelson, the question before this court is not, therefore, whether a judgment on appeal can serve as a basis for an award of attorneys' fees, but whether the outcome of the appeal was sufficient to constitute a judgment for the plaintiff.  In Nelson, we looked to federal case law interpreting federal civil rights statutes permitting "prevailing parties" to recover attorneys' fees.  99 Hawai'i at 266-67, 54 P.3d at 437-38.  We found that "an appellate judgment that affirms or directs a partial victory for plaintiff, while at the same time remanding the case for further proceedings, could serve as the basis for a fees award" provided that the judgment on appeal "creat[es] at least a 'material alteration of

the legal relationship of the parties . . . .'" 99 Hawai'i at 267, 54 P.3d at 438.

In Nelson, fees were not awarded because the case was remanded for a new trial, placing plaintiff "in the same position as she was before trial." Id. We held, however, that Nelson would be entitled to recover appellate fees if she eventually prevailed in the trial court. 99 Hawai'i at 269, 54 P.3d at 440. Nelson's fee request was therefore denied without prejudice, and the trial court was specifically instructed that it could provide for fees for work done on the appeal if Nelson eventually obtained "a judgment . . . that represents a material alteration of the legal relationship between herself and UH." Id.

The circumstances in this case differ from those in Nelson. In this case, we concluded that Gurrobat "presented sufficient evidence, there being no issues with respect to the first and third elements, to satisfy the second element required for recovery on Plaintiffs' UMOC claim." Gurrobat, 133 Hawai'i at 24, 323 P.3d at 815. This determination did not merely return Gurrobat to the position he was in when the case was filed, as in Nelson. In holding that Gurrobat had satisfied the remaining element required for recovery on the UMOC claim, this court materially altered the legal relationship of the parties, as the

14

only task remaining for the circuit court on remand is the determination of the amount of damages.  Gurrobat is therefore entitled to attorneys' fees for time expended on his cross-appeal of the circuit court's grant of summary judgment in favor of Defendants on Gurrobat's UMOC claim.

### B.    Challenged Hours

Having determined that Gurrobat may recover fees for work done on both the appeal and cross-appeal, we now turn to what constitutes reasonable attorneys' fees in this case.

Gurrobat has submitted itemized timesheets detailing the hours that his three attorneys (John Perkin, James Bickerton, and Brandee Faria) expended on the appeal in this case.

Defendants have objected to most of the individual time entries in the documentation submitted by Gurrobat.  Defendants grouped their objections into three categories:  objections to time spent on the cross-appeal, which we have already addressed; objections to entries they view as "block billed"; and objections to entries they view as "vaguely generic."  We therefore turn now to Defendants' block billing and vagueness objections.

### 1.    Alleged Block Billing

Block billing has been defined as "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time

expended on specific tasks." Hawaiʻi Ventures, LLC v. Otaka, Inc., 116 Hawaiʻi 465, 475, 173 P.3d 1122, 1132 (2007) (quoting Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)). Block billing may also be defined as the practice of lumping multiple tasks into a single time entry. Id.

Block billing is a disfavored method of documenting time spent for the purposes of supporting a motion for attorneys' fees. See, e.g., Hawaiʻi Ventures, 116 Hawaiʻi at 475, 173 P.3d at 1132. Parties seeking attorneys' fees bear the burden of demonstrating that the fees requested are reasonable. See Sharp v. Hui Wahine, 49 Hawaiʻi 241, 246, 413 P.2d 242, 247 (1966). As we have noted, the issue with block billing is that it "can make it impossible for the court to determine the reasonableness of the hours spent on each task." Hawaiʻi Ventures, 116 Hawaiʻi at 475, 173 P.3d at 1132. Block billing is problematic because it makes it more difficult for the party requesting fees to demonstrate the reasonableness of the billed hours; a party requesting attorneys' fees block bills at its own risk. See, e.g., Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007) (approving of a 20% reduction applied to specific block billed entries).

Defendants request that we deny recovery of fees for all block billed time, asserting that "it is basically accepted as a

16

matter of law that 'block billing' is totally unacceptable and a rejected means of seeking an award of fees, no matter the context for the request."  (Opposition at 14).  In support of this assertion, Defendants cite to a number of cases, the most recent from 1999, from a range of jurisdictions.  Id. Defendants' reliance on these cases is, however, misplaced.

Neither current Hawai'i law nor the recent practice of American courts suggest that block billing is categorically unacceptable, or that block billing should normally result in denial of the block billed entries.  If anything, it appears generally accepted that block billing should not automatically lead to the rejection of block billed entries.  See, e.g., Mendez v. Cnty. of San Bernardino, 540 F.3d 1109, 1129 (9th Cir. 2008) ("[T]he use of block billing does not justify an across-the-board reduction or rejection of all hours.") (emphasis in original), overruled on other grounds by Arizona v. ASARCO LLC, 773 F.3d 1050, 1058 n.1 (9th Cir. 2014); Thompson, Inc. v. Ins. Co. of N.Am., 11 N.E.3d 982, 1025 (Ind. Ct. App. 2014) (Indiana cases expressly permit block billing); Maddox v. Greene Cnty. Children Servs. Bd. of Dirs., 12 N.E.3d 476, 498 (Ohio Ct. App. 2014) (holding that the trial court was not required to deny fees altogether for block billed entries); 546-552 W. 146th St. LLC v. Arfa, 99 A.D.3d 117, 123 (N.Y. App. Div. 2012) (holding

that block billing does not render a fee request per se unreasonable).

Block billing may lead to the exclusion of the block billed hours where the practice makes it impossible to distinguish between compensable and non-compensable tasks. See Hawai'i Ventures, 116 Hawai'i at 476, 173 P.3d at 1132. Where this is not the case, courts may still reduce the portion of the fee request that was block billed by a percentage to account for the increased difficulty in determining the reasonableness of hours billed in this format. See, e.g., Welch, 480 F.3d at 948 (holding that courts may apply a percentage reduction, but only to hours actually block billed).

With the foregoing in mind, we turn to Defendants' specific block billing objections. Defendants present a list of 103 separate time entries that they object to on the grounds that the entries are "block billed." In 79 of these 103 entries, Gurrobat's counsel billed less than one hour; in 56 of the objected-to entries, counsel billed 0.1 hour.

One-tenth of one hour (0.1 hour) is the shortest generally accepted unit of attorney time for billing purposes. It is possible to block bill even such a short period of time, in that an attorney can accomplish and bill multiple compensable tasks within one six minute block. As long as the billed tasks are

compensable, the six minute block may represent a reasonable expenditure of time.

In addition, block billing can only occur where multiple tasks are lumped together into a single billing entry.  In order to determine if multiple tasks are actually being claimed in a single block, a certain degree of common-sense is required; the mere inclusion of the word "and" in a billing entry is certainly not determinative.  For example, "reviewing and drafting" a document, "reviewing and revising" a document, "drafting and finalizing" a document, and other such descriptions all involve the single task of "working on" a document.[5]  See, e.g., Wise v. Kelly, 620 F.Supp. 2d 435, 451 (S.D.N.Y. 2008).  Similarly, tasks such as drafting a document and making a follow-up telephone call related to the same document can be viewed as part of the single task of working on the document.  See id. Billing descriptions that merely detail the types of activities that make up a single general task will not normally support a block billing objection, provided the court can determine the reasonableness of the hours expended on the general task.

Upon examination, none of the allegedly block billed entries includes more than one general task, and all of the

---

[5]    We note that when counsel actually recorded a task as "work on answering brief," Defendants objected to the entry as being too vague to support a claim for fees.  See Opposition at 18.

billing entries are reasonable.  Defendants' block billing objections are therefore rejected.

### 2.  Alleged Vagueness

Defendants object to numerous time entries on the grounds that the entries are "vaguely generic."  The majority of these objections appear to cover time entries where it is not clear to Defendants whether the task detailed related to the appeal or cross-appeal.  Fees cannot be awarded if it is impossible to distinguish between compensable and non-compensable claims.  See Hawaiʻi Ventures, 116 Hawaiʻi at 478, 173 P.3d at 1135.  Here, because we have held that fees are available for both Defendants' appeal and Gurrobat's cross-appeal, this issue does not arise.

Defendants also state that "some of the time entries are so vaguely generic, that it is impossible to discern whether the hours expended for the task were reasonable . . . ."  Defendants identify only two specific time entries as falling into this group within the brief:  one time entry for 3.6 hours for "[p]repare Answering Brief" and one from the same attorney for 0.4 hours for "[w]ork on answering brief."  (Opposition at 18).  It is true that these two time descriptions lack the specificity seen in many of the entries that appear on Defendants' list of block billing objections.  Nevertheless, the total time spent on the answering brief appears reasonable.

Although such time entries are not excessively descriptive, they are not so vague as to warrant rejection. Defendants' vagueness objections are therefore rejected.

### 3.    Excluded Tasks

We now turn to Gurrobat's itemized fee request. For the most part, the listed items are adequately described and clearly relate to appellate work. Some of the time entries, however, relate to tasks that are not appropriately considered part of the appeal.

In particular, Gurrobat includes time spent on work done at the trial court in order to address issues related to the final judgment. The time entries in question refer to work done at the trial court on a Hawai'i Rules of Civil Procedure Rule 60 motion, and on an Amended Final Judgment.[6] As the trial court is better able to determine the reasonableness of time expended on this issue, and as we have remanded the case to the trial court for further proceedings, we deny the portions of the fee request attributable to the revised judgment without prejudice to Gurrobat requesting these fees at the trial court on remand.

---

[6]    In total, Gurrobat documents 19.2 hours of work by attorney Faria, 2.5 hours by attorney Perkin, and 0.7 hours by attorney Bickerton that are attributable to matters related to procuring the trial court's final judgment.

21

Specifically, we deny without prejudice the following

requested hours:

For attorney Faria:

| Date | Tasks[7] | Total Hours |
|------|----------|-------------|
| 04/10/2012 | Review Final Judgment; review and draft emails with co-counsel regarding [Review Final Judgment] | 0.1 |
| 04/11/2012 | Review and draft emails with co-counsel regarding Final Judgment | 0.1 |
| 04/12/2012 | Review and draft emails with co-counsel regarding Application to Transfer and Final Judgment | 0.1 |
| 04/24/2012 | Review and draft emails with associate regarding Final Judgment Under Jenkins<br>Research Motion for Rule 60 Relief<br>Draft Motion for Rule 60 Relief | 2.1 |
| 04/25/2012 | Research Rule 60 Motion<br>Draft Rule 60 Motion | 5.0 |
| 04/26/2012 | Research Rule 60 Motion<br>Draft Rule 60 Motion | 3.5 |
| 04/27/2012 | Research Rule 60 Motion<br>Further changes made on Motion for Relief (Circuit Court format) (x2) and locate citing. | 0.7 |
| 04/28/2012 | Conference call with co-counsel regarding revision of Final Judgment | 0.3 |
| 04/30/2012 | Meeting with partner regarding Final Judgment; telephone call with P. Alston regarding same.<br>Research regarding Rule 60 Motion<br>Review and draft emails with co-counsel and partner regarding Rule 60 Motion<br>Review and draft emails with staff regarding finalization of Rule 60 Motion | 0.6 |
| 05/01/2012 | Review and draft emails with co-counsel and partner regarding Rule 60 Motion<br>Review Motion for Relief Order regarding HRCP 60 | 0.9 |

---

[7]    For convenience and readability, we have blocked the individual time entries by date.

| Date | Task | Hours |
|------|------|-------|
| 05/02/2012 | Review and draft emails with co-counsel and staff regarding filing Final Judgment in the Bureau of Conveyances | 0.1 |
| 05/07/2012 | Review and draft emails with co-counsel regarding Final Judgment | 0.1 |
| 05/18/2012 | Review and draft emails with co-counsel regarding Motion to Modify the Judgment | 0.1 |
| 06/28/2012 | Review and make changes to amended final judgment.<br>Review and draft emails with co-counsel regarding Amended Final Judgment | 1.4 |
| 07/18/2012 | Review and respond to emails to and from P. Alston regarding Amended Final Judgment<br>Review and make changes to Amended Final Judgment<br>Research on Amended Final Judgment | 1.5 |
| 07/23/2012 | Review and respond to emails regarding revised Final Judgment<br>Review revised Final Judgment; make changes<br>Research regarding Final Judgment | 1.9 |
| 07/31/2012 | Review Defendant's letter of objection to Plaintiff's Amended Final Judgment submitted to judge on 7/24/2012, proposed Amended Final Judgment, Certificate of Service | 0.1 |
| 08/08/2012 | Review and draft emails with associate regarding Pacific Beach's state tax identification number<br>Review and draft emails with co-counsel regarding Pacific Beach's federal identification number to record Amended Judgment | 0.3 |
| 08/09/2012 | Review and draft emails with co-counsel regarding Garnishee Summons | 0.1 |
| 08/13/2012 | Review and draft emails with co-counsel regarding Amended Final Judgment filed in the Bureau of Conveyances | 0.1 |
| 08/18/2012 | Review and draft emails with partner and co-counsel regarding Final Judgment and Bond | 0.1 |
|  | GRAND TOTAL: | 19.2 |

For attorney Bickerton:

| Date | Tasks | Total Hours |
|------|-------|-------------|
| 08/07/2012 | Call with team members re strategy for collection, superseadeas [sic] bond, and | 0.4 |

| | settlement issues | |
|---|---|---|
| 08/08/2012 | Work on application for garnishee summons and recording of judgment at BOC | 0.3 |
| | GRAND TOTAL | 0.7 |

For attorney Perkin:

| Date | Tasks | Total Hours |
|---|---|---|
| 04/23/2012 | Research and draft Amended Final Judgment | 0.1 |
| 04/30/2012 | Meeting with partner regarding Final Judgment and Jenkins issue | 0.4 |
| 05/01/2012 | Review and draft emails with co-counsel and partner regarding Rule 60 Motion | 0.1 |
| 05/02/2012 | Review and draft emails with co-counsel regarding Final Judgment and Supersedeas Bond | 0.1 |
| 07/10/2012 | Email correspondence with partner regarding Final Judgment and settlement | 0.2 |
| 7/19/2012 | Email correspondence regarding Amended Final Judgment | 0.2 |
| 07/24/2012 | Draft and review letter to Judge Sakamoto regarding amended judgment | 0.3 |
| 08/01/2102 | Final edits on letter to judge Review and make changes to drafted letter to judge | 0.3 |
| 08/07/2012 | Review and draft emails with partner and co-counsel regarding Amended Final Judgment Email correspondence with co-counsel regarding Amended Final Judgment | 0.4 |
| 08/08/2012 | Email to Paul Alston regarding Amended Final Judgment | 0.4 |
| | GRAND TOTAL | 2.5 |

## C.    Lodestar Hours and Rates

Courts determine a reasonable attorneys' fee using the lodestar method, in which the number of hours reasonably expended are multiplied by a reasonable hourly rate.  See Kaleikini v. Yoshioka, 129 Hawaiʻi 454, 469, 304 P.3d 252, 267

(2013).  This method is generally considered to be "[t]he most useful starting point for determining the amount of a reasonable fee . . . ."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The lodestar approach is strongly presumed to yield a reasonable fee.  See City of Burlington v. Dague, 505 U.S. 557, 562 (1992).

Gurrobat submitted requests for 150.2 hours of work by attorney Brandee Faria, 25.4 hours by attorney John Perkin, and 85.3 hours by attorney James Bickerton.  After considering Defendants' specific objections and excluding time attributable to work done at the trial court level, as noted above, we find that the lodestar should be calculated based on 131.0 hours of work by attorney Faria (150.2 hours requested less 19.2 hours disallowed for trial court work), 22.9 hours by attorney Perkin (25.4 hours requested less 2.5 hours disallowed for trial court work), and 84.6 hours by attorney Bickerton (85.3 hours requested less 0.7 hours disallowed for trial court work).

Gurrobat requests that we set the fee at the 2011 billing rates of $425 per hour for Mr. Perkin, $375 per hour for Mr. Bickerton, and $325 per hour for Ms. Faria.  Gurrobat states that he is setting these rates at 2011 levels in part to "take advantage of the (unappealed) law of the case establishing those rates as reasonable."  Gurrobat's reliance on "law of the case" is misplaced.  The "law of the case" doctrine provides that "[u]nless cogent reasons support the second court's action, any

modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion." Wong v. City and Cnty. of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) (emphasis added) (citations omitted). Thus, with respect to the reasonableness of appellate fees, the doctrine is not triggered by a trial court determination.

In any event, Gurrobat's requested rates are adequately supported by documentation demonstrating that the rates fall within current market rates. Defendants do not challenge the requested hourly rate. This court therefore approves Gurrobat's requested rates.

Applying these rates to the hours we determine were reasonably expended, we arrive at a final lodestar of $84,032.50.[8]

### D.   Lodestar Modification

Both Gurrobat and Defendants request that this court adjust the lodestar award. Gurrobat requests an upward modification. Defendants assert that an upward modification is inappropriate, and that the lodestar should be adjusted downward.

Our analysis begins, as it must, with the "'strong presumption' that the lodestar represents the reasonable fee."

---

[8]   131.0 hours at $325 per hour for Ms. Faria = $42,575.00; 84.6 hours at $375 per hour for Mr. Bickerton = $31,725.00; 22.9 hours at $425 per hour for Mr. Perkin = $9,732.50.

Kaleikini, 129 Hawaiʻi at 475, 304 P.3d at 273 (2013) (citations omitted).  Where attorneys' fees are requested under fee shifting statutes that provide for the recovery of reasonable attorneys' fees, as is the case here, the party requesting a lodestar adjustment must show that the unmodified lodestar would lead to an unreasonable fee.  See id.

This court's decision in Schefke makes it clear that upward modification of the lodestar may be warranted in fee shifting cases.  Gurrobat argues that consideration of each of the twelve lodestar adjustment factors first set forth in the Fifth Circuit's opinion in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), overruled on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 91-94 (1989), and subsequently adopted by the Ninth Circuit in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), abrogated in part by Davis v. City & Cnty. Of San Francisco, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992), vacated on other grounds on denial of reh'g by 984 F.2d 345 (9th Cir. 1993), demonstrates that an upward adjustment should be awarded in this case.  It is clear that Gurrobat's counsel obtained favorable results; counsels' acceptance of this case on a contingent fee basis played a vital role in the vindication of the rights of the class, and litigating this issue served a public purpose.  See Nelson, 99 Hawaiʻi at 266, 54 p.3d at 437 (noting that civil

rights fee shifting statutes serve a public purpose); Schefke, 96 Hawai'i at 452-454, 32 P.3d at 96-98 (holding that Hawai'i courts have discretion to enhance lodestar when attorneys have accepted a case on a contingent fee basis).  Nevertheless, we decline a fee enhancement in this case.

Upward modification of the lodestar is warranted when necessary to "achieve a 'reasonable' award of fees."  Schefke, 96 Hawai'i at 452, 32 P.3d at 96 (emphasis added).  As we start with the presumption that application of the lodestar is sufficient to determine a reasonable fee, see Kaleikini, 129 Hawai'i at 475, 304 P.3d at 273, it is necessary to enhance the lodestar only if it does not result in a reasonable fee.

Here, Gurrobat argues that a lodestar enhancement could result in a reasonable fee, but does not argue that the lodestar alone does not result in a reasonable fee.  It is insufficient for Gurrobat to demonstrate that the fee will remain within the range of the reasonable fees after application of a multiplier; he must also show that the lodestar does not provide for a reasonable fee.  See id. (rejecting enhancement when party seeking fees failed to "establish that the lodestar is unreasonable, or that enhancement is necessary to achieve a reasonable fee").

Gurrobat's only explicit effort to rebut the presumption that the lodestar was reasonable is an argument in his Reply that the election to seek compensation at below market rates demonstrates that the lodestar was unreasonable. Gurrobat's counsel, however, suggested their rates and stated that the rates are "well within the range of what is reasonable and appropriate in this market." (Faria Decl. at ¶ 10). Even if we treat the statement contained within the Reply as a clarification of Gurrobat's initial argument rather than a new argument raised for the first time in the Reply, see Taomae v. Lingle, 110 Hawai'i 327, 333 n.14, 132 P.3d 1238, 1244 n.14 (2006) (declining to consider matters raised for the first time in the reply memorandum when considering whether to award attorneys' fees), Gurrobat has not successfully rebutted the presumption that the requested rates are reasonable.

By the same token, Defendants' arguments for a downward modification are similarly unavailing. We have already discussed Defendants' specific challenges to the claimed hours, and Defendants do not argue that the proposed hourly rates are unreasonable. Defendants also object to the unaltered lodestar, however, on the grounds that Gurrobat did not obtain an unqualified victory. Although Gurrobat did not completely prevail on appeal, he did prevail on all but one of the issues raised in the appeal and cross-appeal. This court's remand on

the matter of joint and several liability does not alter the fact that Gurrobat prevailed, and his attorneys should recover a fully sufficient compensatory fee.  Schefke, 96 Hawaiʻi at 444, 32 P.3d at 88.

Defendants also argue that the lodestar should be reduced because the central issue in Defendants' appeal was effectively decided by this court's intervening decision in Villon, 130 Hawaiʻi 130, 306 P.3d 175.  As Gurrobat notes, however, Villon was not published until very late in the course of this appeal.[9] The reasonableness of attorneys' fees is measured based on the point in time when the work was performed, and not based on hindsight.  See Woolridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990).

As neither Gurrobat nor Defendants have rebutted the presumption that the lodestar results in a reasonable fee, we will not apply either an upward or downward modification to the lodestar in this case.  Gurrobat is therefore awarded attorneys' fees in the lodestar amount of $84,032.50, plus an additional $3,959.61 (4.712% of the total) for general excise tax.  See Cnty. of Hawaiʻi v. C & J Coupe Family Ltd. P'ship, 120 Hawaiʻi 400, 409-10, 208 P.3d 713, 722-23 (2009) ("[I]t is common

---

[9]    Our opinion in Villon was released on July 15, 2013, almost one month after the final brief had been submitted to this court, and just one week before we issued our order setting the case for oral argument.

practice in this jurisdiction to include an excise tax in the amount of the fee award.").

### E. Costs

Gurrobat seeks costs in the sum of $535.55.[10] Defendants have objected to all but $18.85 of this request. Most of Defendants' objections stem from their argument that costs and fees are not available for Gurrobat's cross-appeal. Based on our previous analysis, Gurrobat is entitled to these costs.

Some of the requested costs, however, pertain to obtaining an amended final judgment from the trial court. As noted earlier, costs and fees for work done at the trial court are best addressed there. We therefore deny Gurrobat's request for the cost of copies of the Rule 60 motion ($94.20) and his request for "Copies Opp To Proposed Final Judgment Opp" [sic] ($5.80) without prejudice.

Gurrobat is therefore awarded costs in the amount of $435.55.

### F. Apportionment of Fees and Costs

In our earlier opinion in this case, we reversed the portion of the circuit court's judgment that held defendants jointly and severally liable for damages, and remanded the case for apportionment of damages. Gurrobat, 133 Hawaiʻi at 18-19,

---

[10]    Gurrobat initially requested $555.45, but withdrew two entries in his Reply.

31

323 P.3d at 809-10.  Neither party addressed the question of apportionment of attorneys' fees in their briefing.  Therefore, it appears Defendants concede joint and several liability.

We note in any event that Defendants elected to present a joint defense throughout the proceedings, and that there is nothing in the record that would provide a court with any basis for apportioning liability for fees and costs.  The question of whether defendants may be held jointly and severally liable for attorneys' fees in a case where defendants are not jointly and severally liable for damages is one of first impression in this jurisdiction.  Other jurisdictions, however, have had cause to examine this issue, and have held that the circumstances of a case may render attorneys' fees indivisible, and that joint and several liability for fees can be appropriate in such cases even in the absence of joint and several liability for damages. See, e.g., Molnar v. Booth, 229 F.3d 593, 605 (7th Cir. 2000) (joint and several award of fees appropriate in case where the issues against the two defendants "were the same or similar."); Walker v. U.S. Dep't of Housing & Urban Dev., 99 F.3d 761, 773 (5th Cir. 1996) (joint and several fee award appropriate where defendants presented joint defense and shared experts); CR-RSC Tower I, LLC, v. RSC Tower I, LLC, 56 A.3d 170, 218 (Md. 2012) (imposing joint and several liability for fees and costs when

claims centered on common issues and attributable to all defendants).

In this case, Defendants proceeded jointly throughout the entirety of the proceedings.  Defendants were represented by the same counsel, and submitted a single set of briefs.  Although liability for the damage award can and will be divided between the Defendants on remand, the work that Gurrobat's counsel put in to the case cannot readily be divided.  See Jones v. Southpeak Interactive Corp. of Delaware, -- F.3d --, 2015 WL 309626, at \*16 (4th Cir. Jan. 26, 2015).  We therefore hold Defendants jointly and severally liable for the payment of appellate fees and costs.  We emphasize, however, that this has no bearing on our prior determination that Defendants are not jointly and severally liable for the damage award itself.

## IV.  Interest

Gurrobat requests that this court award interest on the portions of the circuit court judgment that were affirmed. Gurrobat bases this request on the post judgment interest provisions of HRS § 478-3 (2000), which provides for 10% per annum interest on judgments, and on HRAP Rule 37, which provides:

> Unless otherwise provided by law, if a judgment for money in a civil case is affirmed, whatever interest is allowed by law shall be payable from the date the judgment was entered in the circuit or district court. If the judgment is modified or vacated with a direction that a judgment for money be entered in the circuit or district court, the

> notice and judgment on appeal shall contain instructions
> with respect to allowance of interest.

In this case, we did not remand the case with an explicit direction regarding an amount of money to be entered on appeal. Instead, we remanded for further proceedings consistent with this court's holdings that: (1) the imposition of joint and several liability on Defendants was inappropriate; and (2) that Gurrobat presented sufficient evidence to satisfy the requirements to recover treble damages under HRS § 480-13. Gurrobat, 133 Hawaiʻi at 24-25, 323 P.3d at 814-15.

While remand will still result in a judgment awarding money damages to Gurrobat, the judgment will likely not be in the amount initially awarded. Under the circumstances, therefore, an award of post judgment interest under HRS § 478-3 is not appropriate.

## V.    Conclusion

We hold that Gurrobat is entitled to attorneys' fees for both his appeal and cross-appeal, in the amount of $84,032.50 plus $3,959.61 in general excise tax. We award costs in the amount of $435.55. We hold Defendants jointly and severally liable for payment of both attorneys' fees and costs. We deny, however, that portion of Gurrobat's request that relates to work done to obtain an amended final judgment from the trial court without prejudice to Gurrobat seeking such costs and fees in the

trial court.  Finally, we hold that post judgment interest is not appropriate under the circumstances.

James J. Bickerton                   /s/ Mark E. Recktenwald
and Stephen M. Tannenbaum
for petitioner                       /s/ Paula A. Nakayama

Jeffrey H.K. Sia,                    /s/ Sabrina S. McKenna
Diane W. Wong, and
Brandon H. Ito                       /s/ Richard W. Pollack
for respondents

                                     /s/ Michael D. Wilson

