**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-16-0000666
21-MAY-2021
10:35 AM
Dkt. 26 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

IN THE MATTER OF THE ARBITRATION BETWEEN
UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Respondent/Union-Appellant,
and
STATE OF HAWAI'I, DEPARTMENT OF TRANSPORTATION;
LA-15-02 (GLEN TANAKA) (2016-003),
Petitioner/Employer-Appellee.

_____

SCWC-16-0000666

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000666; S.P. NO. 16-1-0081)

MAY 21, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

We address whether the State of Hawai'i ("State") "incurred"

attorney's fees under Hawai'i Revised Statutes ("HRS") § 658A-25

(2011)[1] in a grievance arbitration when it was represented by an attorney employed by the State's Department of Attorney General. The State sought $20,044.49 in appellate attorney's fees and $35.20 in costs under HRS § 658A-25 as the "prevailing party" in an appeal of a grievance arbitration with the United Public Workers, AFSCME, Local 646, AFL-CIO ("UPW").  The Intermediate Court of Appeals ("ICA") awarded costs but no attorney's fees, on the grounds the State "failed to demonstrate that it incurred, as an expense, liability, or legal obligation to pay, appellate attorney's fees[.]"[2]

We hold that the State "incurred" attorney's fees for the purposes of HRS § 658A-25.  We grant the State's request for attorney's fees in the amount of $16,197.50.

## II.  Background

### A.  Underlying proceedings

On April 13, 2015, UPW filed a grievance on behalf of an employee who had been discharged from his employment with the

---

[1]    HRS § 658A-25 provides, in relevant part:

> (c) On application of a prevailing party to a contested judicial proceeding under section 658A-22, 658A-23, or 658A-24, the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

[2]    The State only appeals the ICA's orders denying attorney's fees and does not appeal the ICA's memorandum opinion or judgment on the merits of the case.

2

State.  UPW and the State entered arbitration.  The State moved to dismiss the grievance based on procedural grounds.  The arbitrator denied the motion to dismiss in a February 3, 2016 "Decision on Arbitrability."

On March 7, 2016, UPW filed a motion to confirm the Decision on Arbitrability in the Circuit Court of the First Circuit ("circuit court").[3]  The circuit court denied the motion, ruling that the Decision on Arbitrability was not an "award" subject to confirmation under HRS § 658A-22 (2011).[4]

On June 20, 2016, the arbitrator issued a "Decision and Award," reducing the employee's discipline to 20 days suspension with no back pay.  On July 8, 2016, UPW filed a "Motion to Confirm Arbitration Decisions and Awards, to Enter Final

---

[3]     The Honorable Karen T. Nakasone presided.

[4]     HRS § 658A-22 provides:

> After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 658A-20 or 658A-24 or is vacated pursuant to section 658A-23.

In addition, HRS § 658A-18 (2011) provides:

> If an arbitrator makes a pre-award ruling in favor of a party to the arbitration proceeding, the party may request the arbitrator to incorporate the ruling into an award under section 658A-19. A prevailing party may make a motion to the court for an expedited order to confirm the award under section 658A-22, in which case the court shall summarily decide the motion. The court shall issue an order to confirm the award unless the court vacates, modifies, or corrects the award under section 658A-23 or 658A-24.

3

Judgment, and For Appropriate Relief." UPW requested that the circuit court confirm both the Decision on Arbitrability and the Decision and Award pursuant to HRS § 658A-22,[5] enter judgment on the arbitration award, and to grant UPW attorney's fees and costs. On September 16, 2016, the circuit court partially granted and partially denied this motion. It granted UPW's request to confirm the Decision and Award, which incorporated the Decision on Arbitrability, but it denied a separate confirmation of the Decision on Arbitrability. The circuit court also denied UPW's request for costs and attorney's fees.

**B.   State's request for attorney's fees and costs**

UPW appealed the circuit court's denial of its request to confirm the Decision on Arbitrability to the ICA. The ICA affirmed the circuit court. United Public Workers, AFSCME, Local 646, AFL-CIO v. Dep't of Transp., CAAP-16-0000666 (App. Mar. 13, 2020) (mem.).

Then, on April 3, 2020, the State filed a request for appellate attorney's fees and costs with the ICA, citing HRS § 658A-25[6] and Hawai'i Rules of Appellate Procedure ("HRAP") Rule 39(a) (2016).[7] The State asserted entitlement to attorney's fees

---

[5]    See supra note 4 for the text of HRS § 658A-22.

[6]    See supra note 1 for the text of HRS § 658A-25.

[7]    HRAP Rule 39(a) provides in relevant part:

(continued . . .)

4

as the prevailing party for fees "incurred" by the State's attorney, who is employed by the State Department of Attorney General. The State pointed out the ICA had affirmed the circuit court's orders in their entirety. The State argued attorney's fees may be awarded even if State attorneys are not paid on an hourly basis, and that Hawai'i courts had awarded attorney's fees in favor of and against government entities in the past. Similarly, Hawai'i courts had awarded attorney's fees to public interest attorneys, who, like State attorneys, did not bill their clients.

The State requested attorney's fees using the "lodestar method" by multiplying an hourly rate of $325.00 by the hours spent on the appeal. The State's attorney maintained he had 24 years of experience, was an appellate specialist, and $325.00 per hour was a reasonable rate based on attorney's fees awarded in other cases. The State thus requested a total of $20,044.49 in fees as well as $35.20 in costs.

---

(. . . continued)

> Except in criminal cases or as otherwise provided by law, if an appeal or petition is dismissed, costs shall be taxed against the appellant or petitioner upon proper application unless otherwise agreed by the parties or ordered by the appellate court; if a judgment is affirmed or a petition denied, costs shall be taxed against the appellant or petitioner unless otherwise ordered; if a judgment is reversed or a petition granted, costs shall be taxed against the appellee or the respondent unless otherwise ordered; if a judgment is affirmed in part and reversed in part, or is vacated, or a petition granted in part and denied in part, the costs shall be allowed only as ordered by the appellate court.

UPW opposed the State's request for attorney's fees and costs, arguing the requested fees were unreasonable and that the hourly rate should be based on the State attorney's salary, which it alleged was the actual expense the State "incurred."

The State's reply contended that an award of "reasonable attorney's fees" required the consideration of prevailing market rates. The State also pointed out this court had previously awarded fees to public interest attorneys based on reasonable hourly rates and had not limited fees to a share of the public interest attorney's actual salary, citing Kaleikini v. Yoshioka, 129 Hawai'i 454, 304 P.3d 252 (2013).

On July 6, 2020, the ICA issued an order granting the State's request for costs but denying its request for attorney's fees. The ICA ruled that while the State was entitled to attorney's fees pursuant to HRS § 658A-25(c), it "failed to demonstrate that it actually 'incurred' appellate attorney's fees." The ICA cited Vinson v. Association of Apartment Owners of Sands of Kahana, 130 Hawai'i 540, 548-49, 312 P.3d 1247, 1255-56 (App. 2013), which had held that the prevailing party "must have paid or be legally obligated to pay such fees and costs" to its attorneys in order to have "incurred" fees.

On July 16, 2020, the State filed a first amended request for attorney's fees and costs further arguing it had "incurred" attorney's fees. As HRS Chapter 658A did not define "incur,"

6

the State cited Black's Law Dictionary, which defined "incur" as, "[t]o suffer or bring on oneself (a liability or expense)." Incur, Black's Law Dictionary (11th ed. 2019). The State contended it had "suffered the liability" of spending 58.9 hours defending against UPW's nonmeritorious appeal, which was time its attorney could have spent on other cases.

The State distinguished Vinson, asserting that case involved private parties and attorneys, not government attorneys. The State maintained the ICA's interpretation of Vinson would "categorically deny[] attorney's fees to the State," which would contravene the purpose of HRS § 658A-25 to discourage nonmeritorious challenges. The State contended Vinson actually stood for the proposition that there must be a "sufficient legal connection" between the party and attorney "such that an attorney's fees award . . . would not result in unjust enrichment." The State asserted there was a sufficient legal connection here because government lawyers and their client agencies are both part of the State.

On September 4, 2020, the ICA issued an order also denying the State's first amended request for attorney's fees and costs. The ICA again determined that the State "failed to demonstrate that it incurred, as an expense, liability, or legal obligation to pay, appellate attorney's fees of $20,044.49."

## III. Standard of Review

### A.   Statutory interpretation

"Statutory interpretation is a question of law reviewable de novo."  State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (internal quotation marks omitted).

This court's construction of statutes is shaped by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & Cty. of Honolulu, 114 Hawai'i 184, 193–94, 159 P.3d 143, 152–53 (2007)).  "When there is ambiguity in a statute, 'the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.'"  Citizens Against Reckless Dev., 114 Hawai'i at 194, 159 P.3d at 153 (citations omitted).  "Moreover, the courts may resort to extrinsic aids in determining legislative intent, such as legislative history, or the reason and spirit of the law."  Id.

8

## IV.  Discussion

The State's Application presents two questions:

> [1]. Did the ICA commit grave errors or act inconsistently with prior case law by denying the State's requests for appellate attorney's fees based on an extreme and irrational interpretation of the word "incur" that categorically denies attorney's fees awards to government attorneys?
>
> [2]. Did the ICA commit grave errors or act inconsistently with prior case law by failing to award attorney's fees to the State according to the prevailing hourly rate?

## A.   The State incurred attorney's fees under HRS § 658A-25(c)

The State argues it "incurred" attorney's fees for purposes of HRS § 658A-25(c) because it spent 58.9 hours defending against UPW's nonmeritorious appeal.  The State maintains the ICA's interpretation of <u>Vinson</u> would categorically deny attorney's fees to the State, which is inconsistent with HRS § 658A-25's purpose of discouraging nonmeritorious challenges.

HRS § 658A-25(c) provides:

> (c) On application of a prevailing party to a contested judicial proceeding under section 658A-22, 658A-23, or 658A-24, <u>the court may add reasonable attorney's fees and other reasonable expenses of litigation incurred</u> in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

(Emphasis added.)  Therefore, HRS § 658A-25(c) allows for the award of attorney's fees and expenses "incurred" by a prevailing party in certain situations.  However, as the State notes, HRS ch. 658A does not define "incur."  Black's Law Dictionary defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)."  <u>Incur</u>, <u>Black's Law Dictionary</u> (11th ed. 2019).

Black's Law Dictionary defines "liability" as "[t]he quality, state, or condition of being legally obligated[.]" Liability, Black's Law Dictionary (11th ed. 2019).

As a matter of first impression, we agree with the State that it "incurred" attorney's fees for the purposes of HRS § 658A-25(c) based on the time its attorney spent on this case, which was time he could not spend on other cases.

Other courts have also awarded attorney's fees to government attorneys under similarly worded statutes. For instance, in Wisconsin v. Hotline Industries, Inc., the Seventh Circuit Court of Appeals stated that "salaried government lawyers, like in-house and non-profit counsel, do incur expenses if the time and resources they devote to one case are not available for other work" in awarding attorney's fees to the State of Wisconsin under 28 U.S.C. § 1446(c).[8] 236 F.3d 363, 365 (7th Cir. 2000) (emphasis added). The court also noted that,

_____

[8]     28 U.S.C. § 1446(c) (1996) provided:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

(Emphasis added.)

"[t]o deny reimbursement under these circumstances would indirectly penalize the institution, be it public or private, for providing its own legal counsel throughout a case."  236 F.3d at 366.  See also Bond v. Blum, 317 F.3d 385, 400 (4th Cir. 2003) ("[A] State's own attorneys representing the State may be awarded attorneys fees under a fee-shifting statute."), abrogated on other grounds by Kirtsaeng v. John Wiley & Sons, Inc., 136 S.Ct. 1979 (2016).

Similarly, courts have also awarded attorney's fees to public interest attorneys and to in-house counsel even when those attorneys did not charge their clients an hourly rate. See Bond, 317 F.3d at 400 ("[I]n-house counsel representing the corporation for whom they work may also be awarded attorneys fees."); Textor v. Bd. of Regents of Northern Illinois Univ., 711 F.2d 1387, 1397 (7th Cir. 1983) (reasoning that in-house counsel incurred attorney's fees because "for every hour in-house counsel spent on this case defendants lost an hour of legal services that could have been spent on other matters"); Sierra Club v. Dep't. of Transp., 120 Hawai'i 181, 202 P.3d 1226 (2009) (awarding attorney's fees to the Sierra Club); Wiginton v. Pac. Credit Corp., 2 Haw. App. 435, 446, 634 P.2d 111, 120 (App. 1981) (awarding attorney's fees to the Legal Aid Society of

11

Hawai'i);[9] Softsolutions, Inc. v. Brigham Young Univ., 1 P.3d 1095, 1106 (Utah 2000) ("[W]e are persuaded by the ample authority from other jurisdictions that a successful litigant who is not primarily engaged in providing legal services may recover attorney fees when represented by salaried in-house counsel.").

Also, this case is distinguishable from Vinson. Vinson ruled that the client would be entitled to attorney's fees under HRS § 658A-25(c) if he could show that he was legally obligated to pay the fees of the law firm representing him. 130 Hawai'i at 548-49, 312 P.3d at 1255-56. The ICA based its holding on the reasoning that the client should not receive a windfall if they did not pay for their attorney's work. 130 Hawai'i at 548, 312 P.3d at 1255 (citing Wiginton, 2 Haw. App. at 446-47, 634 P.2d at 120 (holding a client represented by the Legal Aid Society of Hawai'i could be awarded attorney's fees if they were obligated to pay Legal Aid whatever fees they received)). Unlike Vinson, the client in this case, the State, actually pays its attorney. Like the Wiginton case cited in Vinson, the State would receive

---

[9]   The State's Application notes that Legal Aid attorneys now require their clients to sign formal retainer agreements providing that Legal Aid will be allowed to keep attorney's fees awarded to the client, even when the client does not pay for legal services. However, we do not require public interest attorneys to enter into formal retainer agreements with their clients in order to recover attorney's fees under HRS § 658A-25(c).

whatever fees awarded for fees "incurred" by the attorney in this case.

We therefore hold that attorney's fees may be "incurred" for the purposes of HRS § 658A-25(c), even if the attorney did not charge their client on an hourly basis, "if the time and resources they devote to one case are not available for other work."  Hotline Industries, Inc., 236 F.3d at 365.  Therefore, the State sufficiently demonstrated that it incurred attorney's fees in this case.

While an award of attorney's fees is appropriate in this case, HRS § 658A-25(c) specifically provides that courts "may add reasonable attorney's fees and other reasonable expenses of litigation incurred[.]"  Therefore, we note that courts still have discretion to grant or deny requests for attorney's fees under the statute.  In this case, however, the fees were erroneously denied on the grounds they were not "incurred."

## B.   "Reasonable attorney's fees" are determined based on prevailing market rates

The State also argues attorney's fees should be awarded based on prevailing market rates, not the government attorney's actual salary.  The State asserts an hourly rate of $325.00 was reasonable in this case.

HRS § 658A-25(c) provides that courts may award "reasonable attorney's fees and other reasonable expenses of litigation

13

incurred[.]" (Emphasis added.) "This court employs the 'lodestar' method in determining a reasonable attorney's fee." Kaleikini, 129 Hawai'i at 469, 304 P.3d at 267. "Under the lodestar method, the court multiplies the number of hours reasonably expended by a reasonable hourly rate." Id. Additionally, this court calculates "reasonable hourly rates" according to "prevailing market rates in the relevant community." 129 Hawai'i at 472, 304 P.3d at 270; see Gurrobat v. HTH Corp., 135 Hawai'i 128, 139, 346 P.3d 197, 208 (2015); Cty. of Hawai'i v. C&J Coupe Family Ltd., 120 Hawai'i 400, 407, 208 P.3d 713, 720 (2009). Therefore, an award of reasonable attorney's fees to the State would be calculated based on the prevailing market rates in the community.

The State maintains a $325.00 hourly rate is reasonable for its attorney who had 24 years of experience and was an appellate specialist. The State cited Kaleikini, in which this court determined $300.00 was a reasonable hourly rate for a local attorney with 20 years of experience. 129 Hawai'i at 473, 304 P.3d at 271.

The State also cited a request for attorney's fees filed in another case by the attorney representing UPW in this case. See In re HSTA, 140 Hawai'i 381, 400 P.3d 582 (2017). UPW's attorney's request, which was included as one of the State's exhibits, noted she had over 20 years of experience in

employment law, and that the hourly rate of law partners specializing in labor and employment law ranged from between $280.00 to $480.00.  UPW's attorney requested an hourly rate of $275.00, which this court granted.  We therefore determine that $275.00 is a reasonable hourly rate for the State's attorney in this case.  Hence, we  grant the State's request for attorney's fees in the amount of $16,197.50 (58.9 hours x $275.00 per hour).

## V.    Conclusion

We therefore reverse the ICA's July 6, 2020 and September 4, 2020 orders denying the State attorney's fees and grant the State $16,197.50 in attorney's fees.  The ICA's judgment on appeal is otherwise affirmed.

Jonathan E. Spiker,
for UPW

Robert T. Nakatsuji,
for the State

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

