**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000394
28-APR-2026
08:31 AM
Dkt. 51 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


GENE ARTHUR LEARY, JR., IN HIS CAPACITY AS TRUSTEE
OF THE EDWARD J. SAX FAMILY PROTECTION TRUST
DATED NOVEMBER 20, 2018, Claimant-Appellee,
v.
ROBERT'S HAWAII, INC., Respondent-Appellant


NO. CAAP-24-0000394


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CSP-23-0001192)


APRIL 28, 2026


NAKASONE, CHIEF JUDGE, HIRAOKA AND GUIDRY, JJ.


OPINION OF THE COURT BY HIRAOKA, J.


Gene Arthur Leary, Jr., Trustee of The Edward J. Sax Family Protection **Trust**, filed a special proceeding to compel **Robert's Hawaii**, Inc. to arbitrate a dispute over the price Robert's Hawaii had to pay to buy Trust's interest in Teuila Hawaii **LLC**.  The Circuit Court of the First Circuit granted Trust's motion to compel arbitration.[1]  Robert's Hawaii appeals.

---

[1]     The Honorable Karin L. Holma presided.

It contends the arbitration provision in the contract that created Trust's option to sell was ambiguous and unenforceable.

We hold that the arbitration provision, contained in a contract jointly drafted by parties of equal sophistication and bargaining power, was not ambiguous, and was enforceable. We affirm the *Final Judgment* entered on May 24, 2024. We also affirm the August 29, 2024 *Order Granting in Part Claimant's Motion for Fees and Costs.*

## I. BACKGROUND

Teuila Hawaii Inc. owned and operated Chief's Luau, a lūʻau show in Kapolei, Oʻahu. Trust owned half of the corporation's stock. Robert's Hawaii agreed to buy some of Trust's interest if the corporation was first converted to a limited liability company. They signed the *Membership Interest* ***Purchase Agreement***. The Purchase Agreement's effective date was December 26, 2019. Teuila Hawaii Inc. was converted to a limited liability company on January 2, 2020. LLC's **Operating Agreement** had an effective date of January 7, 2020.[2]

The Purchase Agreement gave Trust the option to sell, and obligated Robert's Hawaii to buy, Trust's remaining interest in what would become LLC, and included a formula to determine the price. The parties call it the ***Option***. Trust exercised the Option in December 2022. The parties disagreed on the price. Trust demanded arbitration. By letter dated December 6, 2023, Robert's Hawaii declined to arbitrate.

---

[2] A limited liability company's operating agreement serves "to regulate the affairs of the company and the conduct of its business, and to govern relations among the members, managers, and company." Hawaii Revised Statutes § 428-103(a) (2004).

Trust sued Robert's Hawaii to compel arbitration. The Circuit Court granted Trust's motion to compel arbitration, denied Robert's Hawaii's motion to stay enforcement of its order pending disposition of this appeal, and awarded Trust attorney fees and costs. The Final Judgment was entered on May 24, 2024. This appeal followed.

## II. POINTS OF ERROR

Robert's Hawaii challenges the orders: (1) granting Trust's motion to compel arbitration; (2) denying Robert's Hawaii's motion to stay enforcement of the arbitration order; and (3) awarding Trust attorney fees and costs.

## III. STANDARDS OF REVIEW

### A. Order Compelling Arbitration

We review an order compelling arbitration *de novo*, examining the evidence considered by the trial court and applying the standard for a motion for summary judgment.[3] Yamamoto v. Chee, 146 Hawaiʻi 527, 533, 463 P.3d 1184, 1190 (2020).

Summary judgment is appropriate when the moving party shows, by admissible evidence, that the material facts are uncontroverted and it is entitled to judgment as a matter of law. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 342, 418 P.3d 1187, 1198 (2018).

### B. Motion to Stay

We review a trial court's denial of a motion to stay enforcement of a judgment pending appeal for abuse of discretion.

---

[3] We disregard the parties' representations and arguments about facts that don't appear in the record on appeal.

See <u>Kelepolo v. Fernandez</u>, 148 Hawaiʻi 182, 187, 468 P.3d 196, 201 (2020) (court has discretion to set amount of supersedeas bond or alternative security sufficient to protect rights of appellee).

### C. Attorney Fees and Costs

We review an order granting or denying attorney fees and costs for abuse of discretion. <u>Deutsche Bank Natʻl Tr. Co. v. Kozma</u>, 140 Hawaiʻi 494, 497, 403 P.3d 271, 274 (2017).

### IV. DISCUSSION

### A. The Circuit Court correctly granted Trust's motion to compel arbitration.

A court deciding a motion to compel arbitration answers two questions: (1) is there an arbitration agreement between the parties; and (2) if so, is the subject matter of the dispute arbitrable under the agreement. <u>Fireman's Fund Ins. Co. v. AIG Haw. Ins. Co.</u>, 109 Hawaiʻi 343, 349, 126 P.3d 386, 392 (2006).

### 1. The Purchase Agreement's arbitration provision is unambiguous and enforceable.

To be valid and enforceable, an arbitration agreement must: (1) be in writing; (2) be unambiguous about the intent to submit disputes or controversies to arbitration; and (3) have bilateral consideration.[4] <u>Douglass v. Pflueger Haw., Inc.</u>, 110 Hawaiʻi 520, 531, 135 P.3d 129, 140 (2006). The construction of, and legal effect given to, an arbitration agreement is a question of law. <u>Yamamoto</u>, 146 Hawaiʻi at 533, 463 P.3d at 1190.

---

[4] Robert's Hawaii does not contend there was no bilateral consideration.

4

The Purchase Agreement contained this arbitration provision:

> 14.3  <u>Arbitration</u>.  ***All disputes under this Agreement*** which cannot be resolved by the parties shall be settled by arbitration in the State of Hawaii, before a single arbitrator in accordance with Chapter 658A of the Hawaii Revised Statutes and the Arbitration Rules, Procedures and Protocols of Dispute Prevention & Resolution, Inc. (**"DPR"**). Arbitration may be commenced at any time by any party hereto by giving written notice to each other party to a dispute that such dispute has been referred to arbitration.  The arbitrator shall be selected by the joint agreement of the parties, but if they do not so agree within twenty (20) days after the date of the notice referred to above, the selection shall be made by the executive in charge of DPR. Any award rendered by the arbitrator shall be conclusive and binding upon the parties hereto.  ***This provision for arbitration shall be specifically enforceable by the parties*** and the decision of the arbitrator in accordance herewith shall be final and binding and there shall be no right of appeal therefrom, except as otherwise provided in HRS Chapter 658A.  The arbitrator shall award to the prevailing party its costs and reasonable attorneys' fees incurred in connection with such arbitration.

(Bold italics added.)

Robert's Hawaii contends the arbitration provision is made ambiguous by other provisions of the Purchase Agreement. Whether an arbitration agreement is ambiguous is a question of law.  <u>Yamamoto</u>, 146 Hawaiʻi at 533, 463 P.3d at 1190.  We construe the Purchase Agreement as a whole, and determine its meaning "from the entire context and not from any particular word, phrase, or clause."  <u>Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n</u>, 113 Hawaiʻi 77, 92, 148 P.3d 1179, 1194 (2006).

Robert's Hawaii argues that sections 14.2, 14.4, and 16.7 of the Purchase Agreement make the section 14.3 arbitration provision ambiguous.  They provide:

> 14.  <u>DEFAULT</u>.
>
> . . . .
>
> 14.2  <u>Remedies for Breach Following First Tranche Closing</u>.  If after the First Tranche Closing, Seller or

5

Buyer fails to perform any of its remaining obligations, including obligations with respect to the purchase and sale of the Second Tranche, and obligation [sic] remaining after the Second Tranche Closing, then the other Party may exercise **any remedies available to it at law or in equity, in any order it deems appropriate in its sole and absolute discretion**, including, but not limited to, seeking specific performance or damages.

14.3 Arbitration. . . .

14.4 Costs of Enforcement.  In the event either Party **brings any suit** or other proceeding with respect to the subject matter or enforcement of this Agreement, the prevailing party (as determined by the court, agency or other authority before which such suit or proceeding is commenced) shall, in addition to such other relief as may be awarded, be entitled to recover reasonable attorneys' fees, expenses and costs of investigation as actually incurred (including, without limitation, reasonable attorneys' fees, expenses and costs of investigation incurred in appellate proceedings, costs incurred in establishing the right to indemnification, or in any action or participation in, or in connection with, any case or proceeding under the Bankruptcy Code, 11 United States Code Sections 101 et seq. or any successor statutes).

. . . .

16.  MISCELLANEOUS.

. . . .

16.7 Applicable Laws; Severability; Venue.  This Agreement shall be governed by and shall be construed in accordance with the laws of the State of Hawaii.  If any provision of this Agreement is held to be invalid or unenforceable, the validity and enforceability of the other provisions of this Agreement will remain unaffected.  The parties agree that **the venue for the enforcement of this Agreement shall be in the Circuit Court of the First Circuit of the State of Hawaii or the United States District Court for the District of Hawaii**.  This Agreement shall be construed in accordance with and governed by the laws of the State of Hawaii.

(Bold italics added.)

Robert's Hawaii relies on Luke v. Gentry Realty, Ltd., 105 Hawaiʻi 241, 96 P.3d 261 (2004), and Narayan v. Ritz-Carlton Development Co., 135 Hawaiʻi 327, 350 P.3d 995 (2015) (**Narayan I**), vacated, 577 U.S. 1056, 136 S. Ct. 800, 193 L. Ed. 2d 701 (2016), aff'd on remand, 140 Hawaiʻi 343, 400 P.3d 544 (2017) (**Narayan II**).  The cases are distinguishable.

6

In Luke, subdivision homeowners sued the subdivision developer and others.  The homeowners had signed the developer's sales agreement.  Under paragraph G, if the developer defaulted, the buyer "may pursue any remedies available at law or in equity[.]"  105 Hawaiʻi at 244, 96 P.3d at 264.  But three pages later, paragraph K contained a mandatory mediation and arbitration provision.  Id. at 249, 96 P.3d at 269.

The defendants moved to dismiss or compel arbitration under the sales agreement.  The circuit court stayed the lawsuit and compelled arbitration.  The plaintiffs appealed.  The supreme court, reading paragraphs G and K together, stated that "the scope of the binding arbitration provision is unclear." Id. at 249, 96 P.3d at 269.  The court held:

> A reasonable buyer entering into this contract would not know whether she or he maintained the right to judicial redress or whether she or he had agreed to arbitrate any potential dispute.  Therefore, an ambiguity exists in the plain language of the contract.
>
> This ambiguity must be resolved in favor of the Plaintiffs.  This court has affirmed the general rule that, in interpreting contracts, **ambiguous terms are construed against the party who drafted the contract**.  Resolving this ambiguity in favor of the Plaintiffs, we cannot say that the Plaintiffs agreed to submit the claims made in this litigation to arbitration; therefore, we hold that the circuit court erred in staying the judicial proceedings pending arbitration.

Id. (emphasis added) (citations omitted).

In the Narayan cases, condominium homeowners signed purchase agreements that incorporated by reference the condominium declaration, which contained an arbitration clause. Narayan II, 140 Hawaiʻi at 346-47, 400 P.3d at 547-48.  After the United States Supreme Court vacated Narayan I, the Hawaiʻi Supreme Court held the arbitration clause was "unconscionable

under common law contract principles."  Id. at 357, 400 P.3d at

558.  The supreme court stated that

> unconscionability so pervades the arbitration clause that it
> is unenforceable.  As a starting point, the arbitration
> clause is **_part of an adhesion contract_** whose terms were
> **_unilaterally determined_** by the stronger contracting party,
> and are ambiguous when read together with the other
> controlling documents.

Id. at 356, 400 P.3d at 557 (emphasis added).

In Narayan I the supreme court stated:

> Not only was the declaration drafted by a party with
> superior bargaining strength, it was recorded in the bureau
> of conveyances prior to the execution of the purchase
> agreements.  The Homeowners had no choice but to conform to
> the terms of the declaration as recorded if they wanted to
> purchase a Ritz-Carlton condominium on Maui.  Thus, **_the
> declaration is "adhesive" — in the sense that it was drafted
> or otherwise proffered by the stronger of the contracting
> parties "on a take this or nothing basis."_**

135 Hawaiʻi at 336–37, 350 P.3d at 1004–05 (emphasis added)

(cleaned up).

Here, Robert's Hawaii's president Roy **Pfund** explained:

> The parties jointly drafted an agreement for Robert's
> [Hawaii] to purchase [Trust]'s interest in [Teuila Hawaii].
> Finalizing the agreement between the parties involved
> extensive negotiations and the exchange of over ten drafts
> and took over nine months.  Both parties had input into the
> drafting of the [Purchase Agreement] and neither party was
> the drafter of the [Purchase Agreement].

"When the contract has been negotiated between two

parties of equal sophistication and equal bargaining power, the

rule of interpreting ambiguities against the drafter has been

held inapplicable."  Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,

74 Haw. 85, 110 n.5, 839 P.2d 10, 25 n.5 (1992).  In such a case:

> Where the language of a contract is susceptible of two
> constructions, one of which makes it fair, customary and
> such as prudent men would naturally execute, while the other
> makes it inequitable, unusual, or such as reasonable men

8

> would not likely enter into, the interpretation which makes a fair, rational and probable contract must be preferred.

Id. at 110, 839 P.2d at 25 (quotation marks omitted).

The Purchase Agreement provisions cited by Robert's Hawaii can easily be reconciled with the arbitration provision. If either party breached after the First Tranche Closing, the non-breaching party could pursue any remedy, in any order it deemed appropriate. If it demanded arbitration and the other party declined, the former could sue to compel arbitration, provided the lawsuit is venued in Hawaiʻi. If it waived the arbitration provision and sued, the action had to be venued in Hawaiʻi. The defendant could then move to compel arbitration or, if it too preferred to litigate, could also waive the arbitration provision. See Fireman's Fund, 109 Hawaiʻi at 354, 126 P.3d at 397 (noting that a party may waive an agreement to arbitrate by taking action "completely inconsistent with any reliance thereon"). We hold that the Purchase Agreement's arbitration provision is unambiguous and enforceable.

### 2. LLC's Operating Agreement does not apply to the dispute over pricing of Trust's interest in LLC.

Robert's Hawaii also argues that sections 11.7 and 11.8 of LLC's Operating Agreement make the Purchase Agreement's arbitration provision ambiguous. **[OB @ 20]** The Operating Agreement does not contain an arbitration provision. Rather, it mandates mediation before litigation:

9

SECTION 11. MISCELLANEOUS PROVISIONS

. . . .

11.7 **Governing Law; Jurisdiction**.  This Agreement shall be construed and enforced in accordance with the laws of the State of Hawaii.  Each Member, by execution of this Agreement, consents and submits to jurisdiction over the Member by, and venue in, the courts of the State of Hawaii in and for Honolulu, Hawaii, regarding any legal action arising from, or otherwise related to, this Agreement.

11.8 **Dispute**.  In the event of a dispute, controversy, or disagreement (the **"Disputes"**) between or among any of the Manager, Company, and the Members, or their Affiliates (the **"Parties"**), and the Parties are unable to resolve the Disputes after a good faith effort to do so, the concerned parties agree to attempt a resolution of all outstanding Disputes through mediation pursuant to the rules of a recognized neutral professional mediation service in Hawaii, such as Dispute Prevention Resolution, Inc. or the American Arbitration Association, prior to commencement of any litigation in a court of competent jurisdiction.  The cost of such mediation, including the mediator's fees, shall be split equally between the parties.  If mediation is not successful in resolving the Disputes, then the Parties are free to proceed with any legal recourse or remedies available to them in a court of law.  The parties hereby agree to waive any and all rights to a trial by jury.

An unexecuted form of operating agreement was attached to the Purchase Agreement.  Unlike the homeowner purchase agreement in the Narayan cases, which incorporated the condominium declaration by reference, the Purchase Agreement did not incorporate the Operating Agreement.  Instead, the form of the document was attached to show what Robert's Hawaii had to approve in writing as one of the conditions for converting Teuila Hawaii from a corporation to a limited liability company.

LLC's members were to be Robert's Hawaii, Trust, and Folosielu **Avea**.  Pfund was to be LLC's manager.  The Operating Agreement states: "The Members and Manager desire to operate [LLC] in accordance with the terms of this [Operating] Agreement and [Hawaii Revised Statutes (**HRS**) Chapter 428]."  Thus, if Robert's Hawaii, Trust, Avea, or Pfund had a dispute over the

conduct of LLC's business, or their relationships as the LLC's members or manager, that dispute need not be arbitrated.

Robert's Hawaii points to the Purchase Agreement's non-contravention section, which provides:

> 4.6 <u>Non-Contravention</u>. [Trust] warrants that except for the matters addressed in <u>Section 6</u> (with respect to conversion of the Company to a limited liability company) neither [Trust] nor Company is required to give any notice to, make any filing with, or obtain any authorization, consent or approval of any government or governmental agency or any other person in order to consummate any of the transactions contemplated in this Agreement, except for such notices, filings, authorizations, consents or approvals, the absence of which would not have a material adverse effect on the Company. Neither the execution and delivery of this Agreement nor the consummation by [Trust] of the transactions contemplated herein will contravene, conflict with, result in violation or breach of, or constitute a default under: (a) the Articles of Incorporation, Bylaws, or Operating Agreement of the Company; (b) any statute, regulation, ordinance, regulation, rule, code, injunction, judgment, order, or decree of any government, governmental agency or court to which [Trust] is subject; (c) any agreement, contract, lease or license, or other legally binding arrangements, whether written or oral, to which [Trust] is a party, except the violation, breach or default would not have a material adverse effect on the Company; or (d) result in the imposition or creation of any encumbrance upon the [interest Trust is selling to Robert's Hawaii].

Robert's Hawaii argues Trust's representation that its execution of the Purchase Agreement "will [not] contravene, conflict with, result in violation or breach of, or constitute a default under . . . the . . . Operating Agreement" creates an inconsistency, because the dispute over the Option is subject to arbitration under the Purchase Agreement, but not under the Operating Agreement. The argument is not persuasive because the Option didn't arise under the Operating Agreement; it involves the Purchase Agreement only.

The Purchase Agreement provided:

11

13.   OPTION TO SELL [TRUST]'S REMAINING INTEREST.

13.1  Acknowledgments.  The Parties acknowledge that as of the Effective Date, (a) [Trust] owns fifty percent (50%) of the stock of the Company; (b) immediately following the conversion of the Company to a limited liability company, [Trust] will own a fifty percent (50%) Membership Interest, represented by 500 Membership Units, in the Company; and (c) [Trust] has agreed to sell a forty percent (40%) Membership Interest, represented by 400 Membership Units, in the Company to [Robert's Hawaii], in two tranches, as set forth in Sections 2 and 11, leaving [Trust] with a ten percent (10%) Membership Interest, represented by 100 Membership Units, in the Company that is not subject to an obligation to sell to [Robert's Hawaii] (the **"Option Interest"**).

13.2  Option to Sell.  [Robert's Hawaii] hereby grants to [Trust], effective upon the First Tranche Closing, the option and right (the **"Option to Sell"**) to require [Robert's Hawaii] at any time during the five (5) year period commencing on the First Tranche Closing Date to purchase the Option Interest for a purchase price equal to (i) ten percent (10%) of the amount equal to the Company's EBITDA[5] for the then most recently completed fiscal year (the **"Last Fiscal"**), as determined in accordance with Section 13.3, multiplied by 4.0, from which product shall be subtracted the amount of Company Long-Term Debt.  [Trust] shall exercise the Option to Sell by delivering written notice thereof to [Robert's Hawaii].

13.3  Determination of EBITDA.  For purposes of this Section 13.3, EBITDA shall be determined as set forth in Section 2.3[6] except that references to "FY2018" shall be understood to be to "Last Fiscal;" and (b) the Last Fiscal EBITDA shall not be subject to the cap of Two Million Dollars ($2,000,000.00) set forth in Section 2.3(a).

Trust exercised the Option on December 14, 2022.

Robert's Hawaii responded on May 10, 2023:

_____

   [5]   EBITDA is an acronym for LLC's "earnings before interest, taxes, depreciation and amortization[.]"

   [6]   As relevant here, section 2.3 of the Purchase Agreement provided:

   If the Parties are unable to reach agreement on the [Last Fiscal] EBITDA within ten (10) calendar days following [Robert's Hawaii]'s receipt of the [Trust]'s Proposed EBITDA, the determination of the Company's [Last Fiscal] EBITDA shall be submitted to N&K CPAs, Inc. or such other certified public accountant acceptable to both parties (the **"Referee"**), who shall decide which of the [Robert's Hawaii]'s Proposed EBITDA and the [Trust]'s Proposed EBITDA is the more correct; and that which is determined by the Referee to be the more correct figure shall be the [Last Fiscal] EBITDA used[.]

> Please note the following adjustments that were made to the calculated EBITDA for 2021, the most recent completed fiscal based on your letter dated December 14, 2022:
>
> 2021 EBITDA - $5,632,121
>
> 10% share based on 4 times multiple $2,252,848
>
> Our calculation to determine the purchase amount of your 10% remaining interest includes **adjustments to reduce your payment** by the cost of our legal fees and settlement with Hawaii Discount and John Fredella totaling $818,809.  This cost is directly related to your agreement with HD and John that ended up being more than the 30 day month to month agreement that was represented to us at the time of purchase and your ownership and control of the domain name and other social media accounts.  The second adjustment is related to **distribution already paid in 2022** of $900.000 [sic].  These distributions **represent a prepayment on the future cash that we are purchasing**.

(Emphasis added.)

Trust replied that Robert's Hawaii improperly excluded income from EBITDA and adjusted its payment obligation in ways not allowed under the Purchase Agreement, and calculated the price to be $3,421,056.

Robert's Hawaii did not respond.  Trust demanded that the EBITDA dispute be resolved by a certified public accountant under the Purchase Agreement section 2.3's baseball arbitration provision.[7]  Trust specified:

> The determination of the applicable Last Fiscal EBITDA is the only issue to be submitted to the Referee.  Any effort by Robert's [Hawaii] to apply discounts or adjustments to the purchase price to be paid under the Option (whether based on legal fees and settlement amounts paid, distributions paid, or otherwise) is not before the Referee, and shall be determined in arbitration pursuant to Section 14.3 of the [Purchase Agreement].

---

[7] *Baseball arbitration*, so named for its use to set Major League Baseball player salaries, is a type of binding dispute resolution where each party submits a proposed figure to an arbitrator.  The arbitrator must choose one of the two figures, and cannot modify the amount.  This approach encourages both sides to be reasonable; if one party submits an outrageous number, the arbitrator is more likely to choose the other party's more reasonable submission.  See Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs., 110 F.4th 762, 768 n.8 (5th Cir. 2024) (citing Jeff Monhait, Baseball Arbitration: An ADR Success, 4 Harv. J. Sports & Ent. L. 105, 133 (2013)).

Trust filed a **Demand for Arbitration** with Dispute Prevention & Resolution, Inc. on November 21, 2023. It alleged:

> 11. Based on [LLC]'s 2021 financial statements, which were prepared by Robert's [Hawaii's] own accountants, the purchase price under the Option equals $3,421,056.
>
> . . . .
>
> 28. As a result of Robert's [Hawaii's] breach of the [Purchase Agreement], the calculation of EBITDA in accordance with the Option, including the question as to whether 2021 grant income is to be included as income in calculating EBITDA, must be determined by the Referee, and the impropriety of Robert's [Hawaii's] attempt to apply additional "adjustments" to reduce the purchase price must be determined in this arbitration proceeding.

By letter dated December 6, 2023, Robert's Hawaii declined to arbitrate. By letter dated December 21, 2023, it agreed "to participate in Mediation and the Referee Process without <u>any</u> waiver of legal or substantive rights or arguments[.]"

Trust filed the proceeding below on December 22, 2023. Its motion to compel arbitration stated:

> A dispute has arisen under the [Purchase Agreement] in relation to [Trust]'s option to sell, and Robert's [Hawaii's] obligation to purchase, [Trust]'s ten percent (10%) membership interest in [LLC] in accordance with the terms of the [Purchase Agreement]. . . . [Trust] respectfully requests that the Court issue an order compelling Robert's [Hawaii] to participate in binding arbitration *as to all issues set forth in the Demand for Arbitration*.

(Emphasis added.)

The Demand for Arbitration was an exhibit to Trust's motion. It alleged that Robert's Hawaii breached the Purchase Agreement by failing to pay the Option price to Trust "in accordance with the terms of the" Purchase Agreement. Count I

14

made a claim for breach-of-contract damages. Count II requested a declaration that:

> a. [Trust] timely and effectively exercised the Option;
>
> b. Robert's [Hawaii] is obligated to purchase the Option Interest from [Trust] at a "purchase price equal to (i) [sic] ten percent (10%) of the amount equal to the Company's EBITDA for the then most recently completed fiscal year (the **"Last Fiscal"**), as determined in accordance with Section 13.3, multiplied by 4.0, from which product shall be subtracted the amount of Company Long-Term Debt";
>
> c. The determination of the "Last Fiscal EBITDA," including the question of whether SVOG[8] proceeds are properly included as income, shall be submitted to the Referee for determination, and such determination shall be binding on [Trust] and Robert's [Hawaii];
>
> d. [Trust] is not liable for amounts incurred by [LLC] or Robert's [Hawaii] in the HD Litigation,[9] and the HD Litigation does not provide grounds for Robert's [Hawaii] to reduce or avoid its obligation to pay the purchase price as required under the Option;
>
> e. Until the Option Closing occurs, there has been no transfer of [Trust]'s membership interest, [Trust] remains a member of [LLC], and [Trust] is entitled to distributions as a member. As such, the purchase price for the Option Interest shall not be reduced based on 2022 distributions paid to [Trust]; and
>
> f. The purchase price that Robert's [Hawaii] is obligated to pay [Trust] for the Option Interest is the amount determined by the Referee, with no reductions or other adjustments to be applied.

The disputes Trust sought to arbitrate arose under the Purchase Agreement, which created the Option and prescribed how the price was to be calculated. None arose under the Operating Agreement, which pertained to the conduct of LLC's business and Trust's and Robert's Hawaii's relationship as LLC's members — not as optionor and optionee under the Purchase Agreement.

---

[8]  SVOG is an acronym for a "Shuttered Venue Operators Grant," paid to businesses affected by the COVID-19 pandemic and associated government restrictions.

[9]  HD Litigation refers to a lawsuit involving Hawaii Discount and John Fredella referred to in Robert's Hawaii's May 10, 2023 calculation of the Option price.

Robert's Hawaii argues that LLC's SVOG proceeds, HD Litigation expenses, and 2022 distributions to Trust involved the conduct of LLC's business. But the amounts, propriety, and reasonableness of the income, expenses, and distributions were not being disputed; the issue for arbitration was whether Robert's Hawaii could use them to reduce LLC's 2021 EBITDA or the price it must pay for Trust's remaining interest in LLC.

On this record, we conclude that nothing in the Operating Agreement made the Purchase Agreement's arbitration agreement ambiguous. We hold that the subject matter of Trust's Demand for Arbitration was arbitrable under the Purchase Agreement. The Circuit Court did not err by granting Trust's motion to compel arbitration.

### B. Robert's Hawaii's appeal from the order denying its motion to stay is moot.

Robert's Hawaii's appeal from the order denying its motion to stay the arbitration pending appeal is moot because we are affirming the order granting Trust's motion to compel arbitration.

### C. The Circuit Court did not abuse its discretion by awarding attorney fees to Trust.

Trust claimed $69,810.97 in attorney fees. The Circuit Court reduced the hourly rate of one of Trust's attorneys from $700 to $550, and declined to award fees for time entries that were "purely clerical in nature[.]" The court awarded $68,666.46 in fees. Robert's Hawaii contends the court erred by awarding

any attorney fees.  Robert's Hawaii alternatively contends the court abused its discretion by not further reducing the fee award.

### 1.    Trust was entitled to recover attorney fees.

HRS § 607-14 (2016) authorizes an award of attorney fees "in all actions on a . . . contract in writing that provides for an attorney's fee, . . . to be paid by the losing party[.]" The Purchase Agreement's section 14.4 (quoted above) provides that "the prevailing party" in a suit to enforce the Purchase Agreement is entitled to recover reasonable attorney fees and expenses.

Robert's Hawaii argues that Trust hasn't yet prevailed, because "the issue of arbitrability was merely a procedural threshold issue untethered to the core dispute."  Trust was entitled to attorney fees *because* the procedural issue — whether Robert's Hawaii had to arbitrate the dispute over the Option price — was *not* tethered to the price dispute.  This is not a case like <u>Kozma</u>, where our vacation of a mortgagee's summary judgment simply put the mortgagor "back in the place he started . . . without addressing a disputed main issue."  140 Hawaiʻi at 499, 403 P.3d at 276 (quotation marks omitted).

Here, Robert's Hawaii disagreed that it had to arbitrate the Option price dispute.  That disagreement was "a matter wholly separate from the merits" of what the Option price should be.  <u>Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.</u>, 68 Haw. 98, 106, 705 P.2d 28, 34 (1985) (cleaned up).  When

17

the Circuit Court granted Trust's motion to compel arbitration, it enforced the Purchase Agreement's arbitration provision. Trust prevailed on the main and only issue presented by the special proceeding. Trust was entitled to an award of reasonable attorney fees and costs under section 14.4 of the Purchase Agreement and HRS § 607-14.

> **2. The Circuit Court acted within its discretion by not further reducing the amount of the fee claim.**

Robert's Hawaii contends the Circuit Court abused its discretion by awarding excessive attorney fees. Trust's fee request was calculated "using the lodestar method, in which the number of hours reasonably expended are multiplied by a reasonable hourly rate." Gurrobat v. HTH Corp., 135 Hawaiʻi 128, 138, 346 P.3d 197, 207 (2015). "The lodestar approach is strongly presumed to yield a reasonable fee." Id. "[T]he party requesting a lodestar adjustment must show that the unmodified lodestar would lead to an unreasonable fee." Id. at 139, 346 P.3d at 208. Robert's Hawaii does not challenge Trust's attorneys' hourly rates.

Robert's Hawaii argues that "three partner-level attorneys" and "an associate" attorney spent "patently excessive amounts of time" "in connection with a discrete special proceeding"; the "Circuit Court should have disregarded or discounted duplicate or triplicate billing entries"; and the "Circuit Court should have disregarded or discounted block billed entries." According to Robert's Hawaii, the issue "is whether

such a process reasonably required four different attorneys, including three partner-level attorneys,[10] to complete that work and whether 213.1 hours of cumulative time on a 'four-corners' analysis of contractual documents was reasonable and necessary."

Trust responds by citing cases for the proposition that "[w]here there are complex issues, spending more than 200 hours on a motion is reasonable." Trust explains that its motion to compel arbitration had to respond to the legal authority cited in Robert's Hawaii's December 6, 2023, letter declining to arbitrate. Trust argues: "The fact that Robert's abandoned its own argument after reading the Motion demonstrates that the time that [Trust]'s counsel put into the Motion was well-spent. But [Trust] still had to address Robert's new arguments[.]"

The Circuit Court concluded "that given all the facts and circumstances, the time spent for the work accomplished was reasonable. Among other things, the issues in the case were complex, there were numerous issues that were analyzed and evaluated, and the analysis, documents and arguments presented to the court were in-depth." That conclusion is supported by the record. The dispute over arbitrability was hard-fought, and both sides had competent, experienced counsel.

Robert's Hawaii argues Trust should not have been awarded fees "pertaining to issues first raised in the Trust's Reply." The argument lacks merit because Robert's Hawaii's

---

[10] We note that Robert's Hawaii was also represented by three partner-level attorneys in the circuit court proceeding.

opposition raised new arguments, and it was reasonable for Trust to respond.  Rule 7(b), Rules of the Circuit Courts of the State of Hawaiʻi.

Robert's Hawaii argues that six time entries were block-billed and should have been disregarded or discounted. "Block billing" is a time-keeping method where a lawyer enters the total daily time spent working on a case instead of itemizing the time expended on specific tasks.  Gurrobat, 135 Hawaiʻi at 135, 346 P.3d at 204.  "Block billing may also be defined as the practice of lumping multiple tasks into a single time entry." Id.

> Neither current Hawaiʻi law nor the recent practice of American courts suggest that block billing is categorically unacceptable, or that block billing should normally result in denial of the block billed entries.  If anything, it appears generally accepted that block billing should not automatically lead to the rejection of block billed entries.
>
> . . . .
>
> In addition, block billing can only occur where multiple tasks are lumped together into a single billing entry.  In order to determine if multiple tasks are actually being claimed in a single block, a certain degree of common-sense is required; the mere inclusion of the word "and" in a billing entry is certainly not determinative.  For example, "reviewing and drafting" a document, "reviewing and revising" a document, "drafting and finalizing" a document, and other such descriptions all involve the single task of "working on" a document.  Similarly, tasks such as drafting a document and making a follow-up telephone call related to the same document can be viewed as part of the single task of working on the document.  Billing descriptions that merely detail the types of activities that make up a single general task will not normally support a block billing objection, provided the court can determine the reasonableness of the hours expended on the general task.

Id. at 135-36, 346 P.3d at 204-05 (citations and footnote omitted).

Five of the six entries challenged by Robert's Hawaii describe activities making up a single general task.  The Circuit Court acted within its discretion by not disregarding the entries or discounting the fees.

One entry, by Andrew J. **Lautenbach**, was for "final review and edits to motion to compel arbitration, and *assist with filing* (1.5 [hours])."  (Emphasis added.)  Robert's Hawaii argued to the Circuit Court that the second clause of the entry "appears to be ministerial in nature" and should be disallowed.

Had the motion to compel been conventionally filed, see Hawaiʻi Electronic Filing and Service Rules (**HEFSR**) Rule 1, the time spent by an attorney to take the document to the circuit court clerk for filing would not be recoverable.  Cf. Haw. Ventures, LLC v. Otaka, Inc., 116 Hawaiʻi 465, 479, 173 P.3d 1122, 1136 (2007) (noting that "messenger fees for the routine task of delivering [a party]'s documents to court[ ] is categorically outside the concept of 'costs.'" (quoting Kikuchi v. Brown, 110 Hawaiʻi 204, 212, 130 P.3d 1069, 1077 (App. 2006))).  Here, Lautenbach was the JEFS User, see HEFSR Rule 1, who signed and had to electronically file the motion to compel, see HEFSR Rules 2.2, and 5.1.

A person employed by an attorney "may register as a JEFS user in his or her own name to electronically file documents on behalf of the employer."  HEFSR Rule 4.1(b).  But "[t]he employer shall be responsible for the actions and documents electronically filed by the assistant or staff member."  Id. Even if Lautenbach's nonlawyer employee was the JEFS User who

21

electronically filed the motion to compel, Lautenbach was still obligated to "make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer[.]"  Hawai‘i Rules of Professional Conduct Rule 5.3(b) (Responsibilities Regarding Nonlawyer Assistants).  Under these circumstances, the Circuit Court acted within its discretion by not discounting Lautenbach's fees.

## V. CONCLUSION

The arbitration provision in the Purchase Agreement, a contract jointly drafted by parties of equal sophistication and equal bargaining power, was unambiguous and enforceable.  The Circuit Court did not err by granting Trust's motion to compel arbitration, nor did it abuse its discretion by awarding attorney fees to Trust.  The May 24, 2024 *Final Judgment* and August 29, 2024 *Order Granting in Part Claimant's Motion for Fees and Costs* are affirmed.

On the briefs:

Joachim P. Cox,
Abigail M. Holden,
Brian W. Tilker,
for Respondent-Appellant
Robert's Hawaii, Inc.

Andrew V. Beaman,
Trevor A. Brown,
Andrew J. Lautenbach,
for Claimant-Appellee
Gene Arthur Leary, Jr.,
in his capacity as Trustee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge